## UNITED STATES *v.* DEWITT.

1. The 29th section of the Internal Revenue Act of March 2d, 1867 (14 Stat. at Large, 484), which makes it a misdemeanor, punishable by fine and imprisonment, to mix for sale naphtha and illuminating oils, or to sell or offer such mixture for sale, or to sell or offer for sale oil made of petroleum for illuminating purposes, inflammable at less temperature or fire-test than 110 degrees Fahrenheit, is in fact a police regulation, relating exclusively to the internal trade of the States.
2. Accordingly, it can only have effect where the legislative authority of Congress excludes, territorially, all State legislation, as for example, in the District of Columbia.   Within State limits, it can have no constitutional operation.

ON certificate of division in opinion between the judges of the Circuit Court for the Eastern District of Michigan; the case being this:

---

* King *v.* Price, 6 East, 323 ; Cheang-kee *v.* United States, 3 Wallace, 320.

Section 29 of the act of March 2d, 1867,* declares,

"That no person shall mix for sale naphtha and illuminating oils, or shall knowingly sell or keep for sale, or offer for sale such mixture, or shall sell or offer for sale oil made from petroleum for illuminating purposes, inflammable at less temperature or fire-test than 110 degrees Fahrenheit; and any person so doing, shall be held to be guilty of a misdemeanor, and on conviction thereof by indictment or presentment in any court of the United States having competent jurisdiction, shall be punished by fine, &c., and imprisonment," &c.

Under this section one Dewitt was indicted, the offence charged being the offering for sale, at Detroit, in Michigan, oil made of petroleum of the description specified. There was no allegation that the sale was in violation or evasion of any tax imposed on the property sold. It was alleged only that the sale was made contrary to law.

To this indictment there was a demurrer; and thereupon arose two questions, on which the judges were opposed in opinion.

(1.) Whether the facts charged in the indictment constituted any offence under any valid and constitutional law of the United States?

(2.) Whether the aforesaid section 29 of the act of March 2d, 1867, was a valid and constitutional law of the United States?

*Mr. Field, Assistant Attorney-General, for the United States.*

Instances of the exercise of police power over certain *instruments* or *agencies* of commerce, for the protection of life and property, are found in various acts of Congress.†

In the *License Tax Cases,*‡ it is *held* that the provisions of the internal revenue laws requiring the payment of a license tax, and prohibiting under penalties the exercise of certain kinds of business within a State without such tax having

* 14 Stat. at Large, 484.

† Acts of March 3, 1843, 5 Stat. at Large, 626; August 30, 1852, 10 Id. 61; May 5, 1864, 13 Id. 63; July 25, 1866, 14 Id. 228.

‡ 5 Wallace, 462.

been paid, are only modes of enforcing the payment of excise taxes; that the payment of such special tax or license tax conveys to the licensee no authority to carry on the business licensed within a State which prohibits its being carried on; but that such provisions of law as incidental to the taxing power are not unconstitutional.

So far as appears, there was no law of the State of Michigan regulating the sale of oil made from petroleum at the time when the alleged offence was committed. There is no decision of this court that Congress cannot enact a law regulating trade in a State, in the absence of any regulation by the State, when the articles of the trade thus regulated may enter into commerce with other States or with foreign countries. It has been decided by this court that Congress may prohibit the exercise of a trade within a State under a penalty, in aid of, or for the purpose of collecting excise taxes levied upon the exercise of such trade.

One reason for the enactment *may* have been the protection of transportation companies between the States and between the United States and foreign countries from danger to property and life in transporting oil, mixed or sold in violation of this statute; and the protection of revenue officers in the examination, gauging, marking, and storing of such oil, and the proper distinction between and classification of different kinds of mineral oils made necessary for the convenient assessment and collection of excise taxes. If this was the reason, then the regulations are fairly incidental to the exercise of the power to regulate commerce or of the taxing power, and, as such, constitutional.

*Mr. Wills, contra.*

The CHIEF JUSTICE delivered the opinion of the court.

The questions certified resolve themselves into this: Has Congress power, under the Constitution, to prohibit trade within the limits of a State?

That Congress has power to regulate commerce with foreign nations and among the several States, and with the Indian tribes, the Constitution expressly declares. But this

express grant of power to regulate commerce among the States has always been understood as limited by its terms; and as a virtual denial of any power to interfere with the internal trade and business of the separate States; except, indeed, as a necessary and proper means for carrying into execution some other power expressly granted or vested.

It has been urged in argument that the provision under which this indictment was framed is within this exception; that the prohibition of the sale of the illuminating oil described in the indictment was in aid and support of the internal revenue tax imposed on other illuminating oils. And we have been referred to provisions, supposed to be analogous, regulating the business of distilling liquors, and the mode of packing various manufactured articles; but the analogy appears to fail at the essential point, for the regulations referred to are restricted to the very articles which are the subject of taxation, and are plainly adapted to secure the collection of the tax imposed; while, in the case before us, no tax is imposed on the oils the sale of which is prohibited. If the prohibition, therefore, has any relation to taxation at all, it is merely that of increasing the production and sale of other oils, and, consequently, the revenue derived from them, by excluding from the market the particular kind described.

This consequence is too remote and too uncertain to warrant us in saying that the prohibition is an appropriate and plainly adapted means for carrying into execution the power of laying and collecting taxes.

There is, indeed, no reason for saying that it was regarded by Congress as such a means, except that it is found in an act imposing internal duties. Standing by itself, it is plainly a regulation of police; and that it was so considered, if not by the Congress which enacted it, certainly by the succeeding Congress, may be inferred from the circumstance, that while all special taxes on illuminating oils were repealed by the act of July 20th, 1868, which subjected distillers and refiners to the tax on sales as manufacturers, this prohibition was left unrepealed.

As a police regulation, relating exclusively to the internal trade of the States, it can only have effect where the legislative authority of Congress excludes, territorially, all State legislation, as for example, in the District of Columbia. Within State limits, it can have no constitutional operation. This has been so frequently declared by this court, results so obviously from the terms of the Constitution, and has been so fully explained and supported on former occasions,* that we think it unnecessary to enter again upon the discussion.

The first question certified must, therefore, be answered in the negative.

The second question must also be answered in the negative, except so far as the section named operates within the United States, but without the limits of any State.

---

* License Cases, 5 Howard, 504; Passenger Cases, 7 Id. 283; License Tax Cases, 5 Wallace, 470; and the cases cited.