## IN THE MATTER OF JOHN BROSNAHAN, JR.

(*United States Circuit Court, Western District of Missouri, Western Division, at Kansas City, June, 1883—On writ of habeas corpus*).

1. HABEAS CORPUS—POWER OF FEDERAL COURTS—STATE CRIMINAL STATUTE.    The Circuit Court of the United States may issue the writ of *habeas corpus* upon the application of any person who is imprisoned in violation of the Constitution, or of any law or treaty of the United States, and if a person be imprisoned under a State statute which is in conflict with either, that Court has power to discharge him.

2. STATE STATUTE HELD NOT IN VIOLATION OF THE CONSTITUTION OF THE UNITED STATES.    The statute of Missouri providing for the punishment by fine and imprisonment of any person who shall manufacture "out of any oleaginous substance, or any compounds of the same, other than that produced from unadulterated milk, or cream from the same, any article designed to take the place of butter or cheese produced from pure unadulterated milk, or cream of the same," or who shall sell or offer for sale, the same as an article of food, is not in violation of any provision of the Constitution of the United States.

3. PATENT LAWS—RIGHTS OF PATENTEE.    The sole object and purpose of the patent laws is to give to the inventor a monopoly of what he has discovered.    What is granted to him is the exclusive right—not the abstract right—but the right in him to the exclusion of everybody else.    He is not authorized by the patent laws to manufacture and sell the patented article in violation of the laws of the State.    His enjoyment of the right may be modified by the exigencies of the community to which he belongs, and regulated by laws which render it subservient to the general welfare if held subject to State control.

4. PATENT—IN WHAT SENSE A CONTRACT.    A patent is a contract only as between the parties to it, namely, the United States on one side and the patentee on the other, and the rights conferred thereby can extend no further than the right granted to the patentee under the patent laws.

5. REGULATION OF COMMERCE.    The statute above mentioned is not a regulation of commerce among the several States.

6. DEPRIVATION OF LIBERTY OR PROPERTY—FOURTEENTH AMENDMENT TO THE CONSTITUTION.    The statute above named does not de-

prive any person of liberty or property without due process of law, within the meaning of the fourteenth amendment to the Constitution.

7.  HABEAS CORPUS—JURISDICTION.  The Federal Courts have no jurisdiction to discharge a prisoner held under a State statute, upon the ground that such statute is in violation of the Constitution of the State, or in excess of the powers which the people of the State have conferred on their Legislature.  If it does not violate the Federal Constitution, the question is for the State Courts.

MR. JUSTICE MILLER.

The prisoner in this case is brought before us by virtue of a writ of *habeas corpus* issued under the authority of this Court, and directed to John W. Rucker, in whose custody the petitioner stated himself to be.

To this writ Mr. Rucker, at the time of producing the body of his prisoner, makes return that he holds him in custody by virtue of a precept to him directed as constable, by A. W. Allen, a justice of the peace of Jackson county, Missouri, and he annexes a copy of the *mittimus* as a part of his return. From this it appears that a criminal proceeding had been instituted against Brosnahan for a violation of the statute of Missouri concerning the sale of oleomargarine, and that on being arrested and brought before the justice of the peace, the latter had set the hearing or trial at some future day several months off, and had fixed a reasonable sum as bail for the prisoner's appearance at that time.  The prisoner refused to give bail, whereupon the magistrate made the order committing him to custody.

The present writ of *habeas corpus* was thereupon sued out.

As the Courts of the United States are of limited jurisdiction, and in ordinary cases can have no control of the Courts or judicial officers of the States while engaged in enforcing their criminal laws, the counsel representing Rucker on behalf of the State, deny the jurisdiction of this Court in the case.

For the prisoner the jurisdiction is asserted on the following grounds:

*First*—That the statute of Missouri is void because the article, oleomargarine, the sale of which it forbids in Missouri, is made and sold under a patent of the United States issued to Hippolyte Mege, December 30, 1873, for a new and useful discovery under the patent laws on that subject.

*Second*—It is void because it impairs the obligation of the contract evidenced by that patent.

*Third*—It is void because it is a regulation of commerce among the several States.

*Fourth*—Because it deprives a man of his property without due process of law. Sec. 1, Art. XIV of the Amendments to the Constitution of the United States.

*Fifth*—Because it is without any authority in the Constitution of the State of Missouri, and is outside of any legislative power whatever.

The statute thus assailed is in the following words:

"An act to prevent the manufacture and sale of oleaginous substances, or compounds of the same, in imitation of the pure dairy product.

"SECTION 1. Whoever manufactures, out of any oleaginous substances, or any compounds of the same, other than that produced from unadulterated milk, or cream from the same, any article designed to take the place of butter or cheese produced from pure, unadulterated milk, or cream of the same, or whoever shall sell or offer for sale the same as an article of food, shall, on conviction thereof, be confined in the county jail not exceeding one year, or fined not exceeding one thousand dollars, or both." Approved March 24, 1881.

The acts of Congress concerning the writ of *habeas corpus* have been brought together in chapter 13 of the Revised Statutes, and are included in sections 751–766.

That which relates to the jurisdiction of the Circuit Courts is found in sections 751 and 753.

"SEC. 751. The Supreme Court and the Circuit and District Courts shall have power to issue writs of *habeas corpus.*"

"SEC. 753. The writ of *habeas corpus* shall in no case extend to a prisoner in jail, unless when he is in custody under or by color of the authority of the United States, or is committed for trial before some Court thereof, or is in custody for an act done or omitted in pursuance of the law of the United States, or of an order, process or decree of a Court or Judge thereof; *or is in custody in violation of the Constitution, or of a law or treaty of the United States,* or being a subject or citizen of a foreign State," etc., etc.

The words italicised above, namely, "or is in custody in violation of the Constitution, or of a law or treaty of the United

States," confer the only power under which, in this case, juris-
diction can be exercised by the Circuit Court.

It is quite clear that if the Missouri statute is justly obnox-
ious to either of the four objections first named, it is
void, and the person held for violating that statute is in cus-
tody in violation of the Constitution of the United States, and
the power and duty of this Court to discharge him are un-
questionable.

We proceed to inquire if the law is so objectionable.

*First*—As to the effect of the patent.

The patent is introduced in evidence, and proof is offered to
show that the article sold by the prisoner, and for which sale
he is prosecuted, is the article specified in Mege's patent, and
that the prisoner has such authority as the patent confers, to
sell it.

The validity of the patent is not disputed.

Has the prisoner, then, a right to sell the article thus pat-
ented, notwithstanding the statute of Missouri, which forbids
such sale?

The Constitution, article I, section 8, clause 8, gives Congress
power "To promote the progress of science and useful arts by
securing, for a limited time, to authors and inventors the *ex-
clusive right* to their respective writings and discoveries," and
the act of Congress which is designed to give effect to this
clause, declares that in every case where a patent is issued un-
der it, the patentee shall have the *exclusive right to make, use
and sell* the subject matter of his patent, whatever it may be.

It is to be observed that no constitutional or statutory pro-
vision of the United States was, or ever has been, necessary to
the right of any person to make an invention, discovery or
machine, or to use it when made, or to sell it to some one else.
Such right has always existed, and would exist now if all pat-
ent laws were repealed.    It is a right which may be called a
natural right, and which, so far as it may be regulated by law,
belongs to ordinary municipal legislation; and it is unaffected
by anything in the Constitution or patent laws of the United
States.

The sole object and purpose of the laws which constitute the
patent and copyright system is, to give to the author and the

inventor a monopoly of what he has written or discovered. That no one else shall make, or use, or sell his writings or his invention without his permission; and what is granted to him is the exclusive right, not the abstract right, but the right in him to the exclusion of everybody else.

For illustration, an author who had written or printed a book always had the right to do so, and to make and sell as many copies as he pleased, and he can do this though he takes out no copyright for his work.

But if he wishes to have the benefit of the exclusive right to do this, he can get it by securing a copyright under the act of Congress.

All that he obtains, then, by this copyright, all that he asks for, or needs, and all it was designed to confer on him, is, to make the right which he had already in common with everybody else, an exclusive right in him—a monopoly in which no one can share without his permission.

But let us suppose that the book which he has thus copyrighted is an obscene and immoral book, which, by the law of the State in which it is published, may be seized and destroyed —and for that reason, does this statute, which forbids any one else but him to print or publish it, authorize him to do so? Can he violate the law because no one else can do it? Does the copyright confer on him a monopoly of vice, and an immunity from crime?

Suppose a discovery of a cheap mode of producing intoxicating liquor, in regard to which the inventor obtains a patent for the product; does this authorize him to defy the entire system of State legislation for the suppression of the use of such drinks?

The answer is, that the purposes of the patent law and of the constitutional provision are answered when the patentee is protected against competition in the use of his invention by others; and when the law prevents others from infringing on his exclusive right to make, use or sell, its object is accomplished.

This proposition is fully supported by the Supreme Court in the case of *Patterson* v. *Kentucky*, 97 U. S. R., 501.

That case also cites with approval the following language

from the opinion of the Supreme Court of Ohio, in the case of *Jordan* v. *The Overseers of Dayton*, 4 Ohio St. R., 295:    "The sole operation of the statute (the patent law), is to enable him (the inventor) to prevent others from using the product of his labors except with his consent.  But his own right of using is not enlarged or affected.   There remains in him, as in every other citizen, the power to manage his property, or give direction to his labors at his pleasure, subject only to the paramount claims of society, which requires that his enjoyment may be modified by the exigencies of the community to which he belongs, and regulated by laws which render it subservient to the general welfare, if held subject to State control."

The principle is re-affirmed in *Webber* v. *Virginia*, 103 U. S. R., 344.

*Second*—Does the Missouri statute impair the obligation of any contract?

The only one to which we are referred as affected by it is the contract found in the patent between the United States and the patentee.

Some reference is made to a contract between the *public* and the patentee.

We know of no such contract in a case like this, except such as may be found to exist between the parties to it, namely, the United States on one side, and the patentee on the other.   If we concede such a contract to exist, it can extend no further than the right granted to the patentee under the patent laws.   We have already shown that this is not the original or absolute right to make, to use and to sell, which is a right not dependent on the patent, but the right to be protected against the manufacture, use or sale of this product by others without his permission.   When the State of Missouri shall pass a law that everybody may manufacture, use and sell oleomargarine, it will probably impair the obligation of the Mege patent.   If it does not, it will certainly authorize the infringment of his right under the patent, and will be void for that reason.   It will be, then, immaterial whether it impairs the obligation of his contract or not.

*Third*—We are unable to see that it is a regulation of commerce among the several States.

If it can be called a regulation of commerce at all, it is lim-

ited to the internal commerce of the State of Missouri. Being a criminal statute, there is no pretense that it can have any operation outside the boundary of the State. The person who manufactures or sells the article outside the State, is not liable to the penalties of the law.

The statute does not forbid its importation or exportation— the bringing of it into the State, or carrying it out of the State. Nor is its use in the State forbidden to those who choose to use it, even for food.

It is only forbidden to manufacture it or to sell it for food, to take the place of butter for that purpose. For all other purposes it may be made and sold in the State, and for that purpose, or any other, it may be imported or exported without violating the law.

If it could be seen that the law was directed by way of discrimination against the product of a sister State, while no such prohibition existed against the same product in Missouri, or was intended to prevent buying and selling between the States, or importation and exportation, whereby the citizens or the productions of a neighboring State were placed in a worse position in regard to that article than the citizens or the productions of Missouri, the argument would not be without force. Such is the doctrine laid down by the Supreme Court of the United States in *Woodruff* v. *Parham*, 8 Wall., 123; and in *Hinson* v. *Lott*, *Id.*, 148; and *The Freight Tax Cases*, 15 Wall., 232; *United States* v. *De Witt*, 9 Wall., 41.

*Fourth*—We are next to inquire whether the statute deprives the owner of this product of his property within the meaning of the clause of the fourteenth amendment, which says: "Nor shall any State deprive any person of life, liberty or property without due process of law."

The statute does not in direct terms authorize the seizure or taking of any property, not even that whose manufacture is forbidden.

The party is not, in fact, deprived of this property by the statute or by any proceeding which it authorizes. The personal punishment by fine and imprisonment which the statute imposes must be inflicted according to the law of Missouri, which allows a trial by jury, with all the other forms which from time immemorial have been held to be due process of

law.    The moneyed fine, then, and the liberty of which the party may be deprived are undoubtedly imposed by due process of law.

If it be urged, as it has in some cases, that the effect of the statute upon the right to sell the property is such as to destroy its value, and, therefore, to deprive the owner of it, there are several answers to the proposition:

First, the value of the property can hardly be so affected that the party may be said to be deprived of it, while it can readily be transported into some other State, and sold without restriction.

Secondly and conclusively, that as to the product made or imported into the State after the passage of the statute, the statute was and must be taken as part of the due process of law, and deprived the party of nothing which he owned when it was passed, or which he had a right to make or acquire for sale as food at the time he did so make or buy it.

The law in such case did not deprive him of his property. If he is injured in relation to that property, it is by his own action in buying or making it, with the statute before his eyes. That statute was, as to him, and to this property, due process of law, of which he had due notice.    (*Bartemeyer* v. *State of Iowa*, 18 Wall., 132).    His injury or loss, if any, arises out of his determination to defy the law, and it is by the law and its mode of enforcement which, existing at the time, is due process of law, that he must be tried.

*Fifth*—The evidence in favor of the petitioner is abundant, and of the highest character to prove that the article which he sells, and which he is forbidden to sell by the statute of Missouri, is a wholesome article of food prepared from the same elements in the cow which enables her to yield the milk from which butter is made, and when made by Mege's process, is the equal in quality for purposes of food of the best dairy butter.

No evidence is offered by counsel for Rucker or for the State to contradict this, because they say it is wholly immaterial to the issue before the Court.

A very able argument is made by counsel, whose ability commands our respect, to show that such being the character of the article whose manufacture and sale is forbidden by the

65

statute, the Legislature of Missouri exceeded its powers in passing it.

It is not so much urged that anything in the Constitution of Missouri forbids or limits its power in this respect by express language, as that the exercise of such a power in regard to a property shown to be entirely innocent, incapable of any injurious results or damage to public health or safety, is an unwarranted invasion of public and private rights, an assumption of power without authority in the nature of our institutions, and an interference with the natural rights of the citizen and of the public, which does not come within the province of legislation.

The proposition has great force, and in the absence of any presentation of the matters and circumstances which governed the Legislature in enacting the law, we should have difficulty in saying it is unsound.

Fortunately, as the case before us stands, we feel very clear that even if well founded, this objection to the statute is one which we cannot consider in this case.

As already stated, when a writ of *habeas corpus* is issued by the Circuit Court in behalf of one in custody of a State officer, under judicial proceedings in State Courts and under State laws, the only inquiry we can make is, whether he is held in "violation of the Constitution, or of a law of Congress, or a treaty of the United States."

The act in question may be in conflict with the Constitution of the State, without violating the Constitution, or any law or treaty of the United States.

It may be in excess of the powers which the people of Missouri have conferred on their legislative body, and therefore, void, without infringing any principle found in the Constitution, laws or treaties of the United States.

We have, in the four objections to this statute first considered, examined all the points in which it is supposed to conflict with the Constitution and laws of the United States, and we know of no others, and no others have been suggested.

The proposition now under consideration, if well taken, is one for the consideration of the State Court when this case comes to trial. It is, in a *habeas corpus* case in the Federal Courts, excluded by the express language of the statute conferring jur-

isdiction in such cases.    This Court does not sit here clothed with full and plenary powers either of common law or of criminal jurisdiction.    Its criminal jurisdiction is still more limited than its jurisdiction at common law and in chancery.

It has, in common with the District Court, jurisdiction of all offenses against the statutes of the United States.    Such is not the case before us.

Section 753 goes further, and authorizes the Court to issue writs of *habeas corpus* in all cases where a person is in custody in violation of the laws of the United States, including its Constitution and its treaties.

The prisoner in this case is not prosecuted for a crime or offense against the United States.    We have, therefore, no general jurisdiction of the case.

We have endeavored to show that while held under a law of Missouri by Missouri officials, it is not in violation of, it is not forbidden by the Constitution, or any law or treaty of the United States; and the act of Congress, under which alone we can exercise the special power of issuing writs of *habeas corpus*, permits us to go no further.

The return of the constable, Rucker, to the writ is sufficient, and the prisoner must be remanded to his custody, and it is so ordered.

McCrary, Circuit Judge, concurs.