Ex parte DICK.

(Circuit Court of Appeals, Ninth Circuit. October 2, 1905.)

No. 1,236.

INDIANS—INTRODUCING LIQUOR INTO INDIAN COUNTRY—POLICE POWER OF UNITED STATES.

> The police power of the United States can only be exercised where the legislative authority of Congress excludes territorially all state legislation, and where the United States has conveyed under its land laws lands within a state ceded to it by an Indian tribe, and such lands have passed into the ownership of individuals and a municipality of the state which has been formed thereon, they are no longer subject to the provisions of Rev. St. § 2139, as amended by Act Jan. 30, 1897, c. 109, 29 Stat. 506, making it an offense to introduce liquor into the Indian country; nor can that law be retained in force over such lands by agreement with the Indians in the contract or treaty of cession, the police power of the state to regulate the sale of liquor thereon being exclusive.

On Application for Writ of Habeas Corpus.

George W. Tannahill and F. E. Fogg, for petitioner.
N. M. Ruick, U. S. Atty.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

MORROW, Circuit Judge. The petitioner was convicted in the United States District Court for the Northern Division of Idaho at the May term, 1905, upon an indictment charging him with the crime of introducing intoxicating liquors into the Indian country, to wit, into and upon the Nez Perce reservation, in the county of Nez Perce, in the state of Idaho, in violation of section 2139 of the Revised Statutes of the United States, as amended by the act of January 30, 1897, c. 109, 29 Stat. 506. The petition for the writ of habeas corpus and certiorari was presented to this court during its recent session in Seattle, and after consideration a writ of certiorari was directed to issue returnable at Portland, to bring up a transcript of the record and proceedings in the case.

The petitioner challenges the jurisdiction of the trial court on the ground that the act of the petitioner, which is made the basis of the charge, namely, that he introduced intoxicating liquors into the Indian country, was not committed in the Indian country, but in the village of Cul de Sac, a municipal corporation organized under the laws of the state of Idaho. The petitioner is a Umatilla Indian, who has received an allotment of land in severalty.

The act of January 30, 1897, provides as follows:

"That any person who shall sell, give away, dispose of, exchange, or barter any malt, spirituous, or vinous liquor of any kind whatsoever, or any essence, extract, bitters, preparation, compound, composition, or any article whatsoever, under any name, label, or brand, which produces intoxication, to any Indian to whom allotment of land has been made while the title to the same shall be held in trust by the government, or to any Indian a ward of the government under charge of any Indian superintendent or agent, or any Indian, including mixed bloods, over whom the government, through its departments, exercises guardianship, and any person who shall introduce or attempt to introduce any malt, spirituous, or vinous liquor, including

beer, ale, and wine, or any ardent or intoxicating liquor of any kind what-
soever, into the Indian country, which term shall include any Indian allot-
ment while the title to the same shall be held in trust by the government, or
while the same shall remain inalienable by the allottee without the con-
sent of the United States, shall be punished by imprisonment for not less
than sixty days, and by a fine of not less than one hundred dollars for the
first offense and not less than two hundred dollars for each offense there-
after: Provided, however, that the person convicted shall be committed
until fine and costs are paid. But it shall be a sufficient defense to any
charge of introducing or attempting to introduce ardent spirits, ale, beer,
wine, or intoxicating liquors into the Indian country, that the acts charged
were done under authority, in writing, from the War Department or any
officer duly authorized thereunto by the War Department." 29 Stat. 506.

Act Feb. 8, 1887, c. 119, 24 Stat. 388, authorized the President to al-
lot lands in severalty to Indians on the various reservations, whenever
in his opinion any reservation or any part thereof would be advanta-
geous for agricultural and grazing purposes. Section 6 of the act pro-
vided as follows:

"That upon the completion of said allotments and the patenting of the
lands to said allottees, each and every member of the respective bands or
tribes of Indians to whom allotments have been made shall have the bene-
fit of and be subject to the laws, both civil and criminal, of the State or
Territory in which they may reside; and no territory shall pass or enforce
any law denying any such Indian within its jurisdiction the equal pro-
tection of the law. And every Indian born within the territorial limits of
the United States to whom allotments shall have been made under the pro-
visions of this Act, or under any law or treaty, and every Indian born
within the territorial limits of the United States who has voluntarily taken
up, within said limits, his residence separate and apart from any tribe of
Indians therein, and has adopted the habits of civilized life, and every
Indian in Indian Territory, is hereby declared to be a citizen of the United
States, and is entitled to all the rights, privileges, and immunities of such
citizens, whether said Indian has been or not, by birth or otherwise, a mem-
ber of any tribe of Indians within the territorial limits of the United States
without in any manner impairing or otherwise affecting the right of any
such Indian to tribal or other property." 24 Stat. 390.

Pursuant to this act, the President authorized negotiations with the
Nez Perce Indians in Idaho for the cession to the United States of cer-
tain of their lands in that state, and thereupon an agreement was entered
into between commissioners of the United States appointed for that pur-
pose and the principal men and other male adults of the tribe for such
cession. This agreement was dated May 1, 1893. It provides in article
1 for the cession, relinquishment, and conveyance to the United States
by the Nez Perce Indians of all their claim, right, title, and interest
in and to all the unallotted lands within the limits of the Nez Perce Res-
ervation, saving and excepting certain described tracts of land which
are retained by the Indians. It is provided in article 9 as follows:

"It is further agreed that the lands by this agreement ceded, those re-
tained, and those allotted to the said Nez Perce Indians, shall be subject,
for a period of twenty-five years, to all the laws of the United States pro-
hibiting the introduction of intoxicants into the Indian country, and that the
Nez Perce Indian allottees, whether under the care of an Indian agent or not,
shall, for a like period, be subject to all the laws of the United States pro-
hibiting the sale or other disposition of intoxicants to Indians." Act Aug. 15,
1894, c. 290, 28 Stat. 330.

It is under the terms of this agreement contained in article 9 that the petitioner is charged with having introduced intoxicating liquors into the Indian country. The village of Cul de Sac is located upon the land ceded by the Indians to the United States, about seven or eight miles from the exterior boundary of the Indian school reservation, and no reservation or any part of a reservation used for government purposes or for Indian purposes is within the boundaries of such village. Prior to the transaction involved in this case the title to the lands upon which the village of Cul de Sac is located had passed from the United States by patent under the townsite laws to the probate judge of Nez Perce county, Idaho, in trust for the inhabitants of the village.

There is no question as to the plenary authority of Congress over the tribal relations of the Indians. Such authority has been exercised by Congress from the beginning, and the power has always been deemed a political one, not subject to be controlled by the judicial department of the government. Lone Wolf v. Hitchcock, 187 U. S. 565, 23 Sup. Ct. 216, 47 L. Ed. 299. But the question involved in the present case does not relate to the tribal affairs of the Nez Perce Indians. The question is whether Congress can break up the tribal relations of these Indians, allot lands to the individual Indians in severalty, give them the benefit of and make them subject to the laws, both civil and criminal, of the state of Idaho, make them citizens of the United States and declare them entitled to the rights, privileges, and immunities of such citizens, open the lands which they have ceded to the United States to settlement under the land laws of the United States, provide for the conveyance of such lands to individuals and municipal corporations, and still retain over such lands the police power prescribed in article 9 of the agreement of May 1, 1893, with the Nez Perce Indians, providing that for a period of 25 years all the laws of the United States prohibiting the introduction of intoxicating liquors into the Indian country shall be applicable to such lands? We do not think that Congress can reserve or exercise such police power within the territorial limits of a state. The police power of the United States can only be exercised where the legislative authority of Congress excludes territorially all state legislation. United States v. De Witt, 9 Wall. 41, 45, 19 L. Ed. 593; Slaughter House Cases, 16 Wall. 36, 64, 21 L. Ed. 394.

The late case entitled Matter of Heff, 197 U. S. 505, 25 Sup. Ct. 506, 49 L. Ed. 848, was a petition to the Supreme Court of the United States for a writ of habeas corpus. The petitioner had been convicted of selling liquor to an Indian, a member of the Kickapoo Tribe, who had received an allotment of a patent of land under the provisions of the act of February 8, 1887. It was claimed in that case, as in this, that this was in violation of the act of January 30, 1897. The Supreme Court, speaking of the limitation of the police power of the general government in such a case, said:

"In this Republic there is a dual system of government—national and state. Each within its own domain is supreme, and one or the chief functions of this court is to preserve the balance between them, protecting each in the powers it possesses and preventing any trespass thereon by the other. The general police power is reserved to the states, subject, however, to the

limitation that in its exercise the state may not trespass upon the rights and powers vested in the general government. The regulation of the sale of intoxicating liquors is one of the most common and significant exercises of the police power. And, so far as it is an exercise of the police power, it is within the domain of state jurisdiction."

The court says further:

"We are of the opinion that when the United States grants the privileges of citizenship to an Indian, gives to him the benefit of and requires him to be subject to the laws, both civil and criminal, of the state, it places him outside the reach of police regulations on the part of Congress; that the emancipation from federal control thus created cannot be set aside at the instance of the government without the consent of the individual Indian and the state; and that this emancipation from federal control is not affected by the fact that the lands it has granted to the Indian are granted subject to a condition against alienation and incumbrance, or the further fact that it guaranties to him an interest in tribal or other property."

This was said with respect to a sale of liquor to an Indian, over whom it was said the general government had parted with its guardianship, and it was held that the court had no jurisdiction of the offense charged. In the present case the sale of liquor was made in a municipal territory clearly within the jurisdiction of the state, and outside the jurisdiction of the United States. With respect to such a case, the court, in the Case of Heff, supra, said:

"It will not be doubted that an act of Congress attempting as a police regulation to punish the sale of liquor by one citizen of a state to another within the territorial limits of that state would be an invasion of the state's jurisdiction, and could not be sustained, and it would be immaterial what the antecedent status of either buyer or seller was. There is in these police matters no such thing as a divided sovereignty. Jurisdiction is vested entirely in either the state or the nation, and not divided between the two."

This statement of the law by the Supreme Court we think disposes of the present case.

It is urged on behalf of the United States that the protection of the Indians afforded by the agreement of May 1, 1893, is necessary to protect them from the deplorable consequences resulting from the liquor traffic, that the state does not assume to regulate such traffic in that territory, and that, in default of a law prohibiting the sale of intoxicating liquors to these Indians, their degradation and ruin will soon be complete. It is undoubtedly the duty of the white man to protect the Indian from this consuming vice, and there can be no question as to the necessity for prohibitory legislation in this regard. But the courts cannot supply such legislation, or enforce agreements beyond their jurisdiction. This argument should be addressed to the Legislature of the state, which will undoubtedly perform its duty in this respect.

It follows that the District Court of Idaho did not have jurisdiction of the offense charged in the indictment, and therefore the petitioner is entitled to his discharge from imprisonment; and it is so ordered.