### UNITED STATES v. BOSS.

(District Court, D. Utah. September 24, 1906.)

#### No. 903.

1. INDIANS—INTRODUCING LIQUORS INTO INDIAN COUNTRY—POLICE POWER OF UNITED STATES.

Act Jan. 30, 1897, c. 109, 29 Stat. 506, prohibiting the introduction of intoxicating liquors into the Indian country, is a police regulation; and if it is to apply within a state it must be because of the status of the Indians for whose protection it was enacted, or of the locus of the forbidden act as being on a reservation.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 27, Indians, § 61.]

2. SAME—EXTINGUISHMENT OF RESERVATION—ALLOTMENT OF LANDS IN SEVERALTY—"INDIAN COUNTRY."

Since the allotment of lands in severalty to all of the Indians on the Uintah Indian reservation in Utah, subject to the provisions of Act Feb. 8, 1887, c. 119, 24 Stat. 388, and the restoration of the remainder of the lands of the reservation to the public domain, no part of such lands is "Indian country," within the meaning of Act Jan. 30, 1897, c. 109, 29 Stat. 506; and a prosecution cannot be maintained thereunder for introducing liquor thereon, even on a portion which was subsequently reserved by executive order for agency and school purposes.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 27, Indians, § 61.

For other definitions, see Words and Phrases, vol. 4, pp. 3545, 3549.]

On Demurrer to Indictment.

Joseph Lippman, for the United States.
T. W. O'Donnell and M. M. Kaighn, for defendant.

MARSHALL, District Judge. The indictment is found under Act Jan. 30, 1897, c. 109, 29 Stat. 506, and charges that the defendant, on September 20, 1905, willfully and knowingly introduced spirituous, ardent, and intoxicating liquors into the Indian country, to wit, into and upon certain lands specifically described in the indictment, and stated to be a part of the Uintah agency and Uintah school reserve. To this indictment the defendant has demurred, the point of the demurrer being that before September 20, 1905, a portion of the land within the Uintah reservation had been allotted in severalty to each of the Indians. The remainder, including the land described in the indictment, had become a part of the public domain, and the act of January 30, 1897, was no longer applicable.

The legislation of the Congress of the United States and the historical and geographical facts of general interest with respect to this res-

ervation must be judicially noticed. The reservation was created by proclamation of the President dated October 3, 1861, and was afterwards recognized by numerous acts of Congress. On May 27, 1902, an act of Congress was passed (32 Stat. 245, c. 888) which directed an allotment of land in severalty to each member of the tribe occupying the reservation, that this allotment should be made prior to October 1, 1903, and that the unallotted land should on that date be restored to the public domain. On June 19, 1902, Congress directed that these allotments should be made in conformity to the provisions of Act Feb. 8, 1887, c. 119, 24 Stat. 388, and be subject to all the restrictions and carry all the privileges incident to allotments made under said act. Subsequently various statutes were enacted which extended until September 1, 1905, the time for opening the unallotted lands to public entry, and by Act March 3, 1905, c. 1479, 33 Stat. 1070, the President was authorized to reserve of the unallotted lands, and prior to the opening thereof for settlement and entry, such portions as he might consider necessary for an addition to the Uintah forest reserve and for reservoir sites or other lands necessary to conserve and protect the water supply of the Indians or for general agricultural development. On July 11, 1905, the Secretary of the Interior directed that the lands specifically described in the indictment be reserved for school and agency purposes under the name of "Uintah Agency and Uintah School Reserve." On July 14, 1905, the President issued his proclamation to the effect that the unallotted land would be open for entry and settlement on August 25, 1905.

The act of February 8, 1887, before cited, authorized the allotment of land in severalty to Indians on the several reservations whenever, in the opinion of the President, any reservation, or part thereof, would be advantageous for agriculture and grazing purposes, and in section 6 provided:

"That upon the completion of said allotments and the patenting of the lands to said allottees, each and every member of the respective bands or tribes of Indians to whom allotments have been made shall have the benefit of and be subject to the laws, both civil and criminal, of the state or territory in which they may reside; and no territory shall pass or enforce any law denying any such Indian within its jurisdiction the equal protection of the law. And every Indian born within the territorial limits of the United States to whom allotments shall have been made under the provisions of this act, or under any law or treaty, and every Indian born within the territorial limits of the United States who has voluntarily taken up, within said limits, his residence separate and apart from any tribe of Indians therein, and has adopted the habits of civilized life, and every Indian in Indian Territory, is hereby declared to be a citizen of the United States, and is entitled to all the rights, privileges, and immunities of such citizens, whether said Indian has been or not, by birth or otherwise, a member of any tribe of Indians within the territorial limits of the United States without in any manner impairing or otherwise affecting the right of any such Indian to tribal or other property."

The effect of this provision was to make every Indian to whom an allotment of land had been made in conformity with the provisions of that act a citizen of the United States, and of necessity a citizen of the state in which he resided and subject to the laws thereof. Matter of Heff, 197 U. S. 488, 25 Sup. Ct. 506, 49 L. Ed. 848. The statute of January 30, 1897, is a police regulation. If it is to apply within a

state, it must be because of the status of the Indians for whose protection it was enacted, or of the locus of the forbidden act as being on a reservation.

The Supreme Court of the United States determined in the case above cited that the dependent status of the Indian ceased by virtue of the act of February 8, 1887, on the allotment of land in severalty to him, and that thereafter his former condition of tutelage afforded no basis for police regulation by the national government within the boundaries of a state. In the case of Draper v. United States, 164 U. S. 240, 17 Sup. Ct. 107, 41 L. Ed. 419, it was held by the same court that the fact that a crime was committed on an Indian reservation did not warrant prosecution therefor by the United States when the criminal act was within the police power of the state. These decisions seem determinative here. The precise question presented was passed on by the Circuit Court of Appeals of the Ninth Circuit in Ex parte Dick, 141 Fed. 5, 72 C. C. A. 667. In that case, the defendant, having been convicted by the United States District Court of Idaho under an indictment charging him with introducing intoxicating liquors into the Indian country, to wit, upon the Nez Perce reservation, presented his petition for a writ of habeas corpus direct to the Circuit Court of Appeals. There, as here, to each Indian within the reservation, land had been allotted in severalty, and there by the treaty providing for the relinquishment of the Indian title to the unallotted lands it was stipulated:

"It is further agreed that the lands by this agreement ceded, those retained, and those allotted to the said Nez Perce Indians, shall be subject, for a period of twenty-five years, to all the laws of the United States prohibiting the introduction of intoxicants into the Indian country, and that the Nez Perce Indian allottees, whether under the care of an Indian agent or not, shall, for a like period, be subject to all the laws of the United States prohibiting the sale or other disposition of intoxicants to Indians."

It was held by the Court of Appeals that the District Court of Idaho did not have jurisdiction of the offenses charged in the indictment. The opinion of the court is so satisfactory as to render unnecessary further discussion here. It is true that on appeal to the Supreme Court of the United States the judgment of the Court of Appeals in Ex parte Dick was reversed (Whitney v. Dick, 202 U. S. 132, 26 Sup. Ct. 584, 50 L. Ed. 963), but on the sole ground that the defendant's remedy was by appeal, and not by petition in the appellate court for a writ of habeas corpus. The decision of the Supreme Court left untouched the opinion of the Circuit Court of Appeals on the main question.

It follows that the demurrer must be sustained, and the indictment dismissed.