UNITED STATES v. SUTTON et al.

(District Court, E. D. Washington, E. D.  October 23, 1908.)

No. 693.

1. INDIANS (§ 35*)—INTRODUCING LIQUORS INTO "INDIAN COUNTRY"—EFFECT OF ALLOTMENT OF LAND IN SEVERALTY.

The provision of Rev. St. § 2139, as amended by Act Jan. 30, 1897, c. 109, 29 Stat. 506, which makes it a criminal offense to introduce liquor into the Indian country, is a police regulation, and can be enforced only as to land within the exclusive territorial jurisdiction of the United States; and an indictment thereunder will not lie for taking liquor upon land within a state which was allotted in severalty to an Indian under Act Feb. 8, 1887, c. 119, 24 Stat. 389, prior to the amendatory act of May 8, 1906, c. 2348, 34 Stat. 182, and which is held in trust by the United States, such land being no longer "Indian country," the effect of the allotment having been to make it, as well as the allottee, subject to the jurisdiction and laws of the state, and to exclude therefrom the police powers of the United States, which have no relation to the protection of its title to, or rights in, the land as trustee.

[Ed. Note.—For other cases, see Indians, Cent. Dig. §§ 61, 62; Dec. Dig. § 35.*

For other definitions, see Words and Phrases, vol. 4, pp. 3545–3549.]

2. INDIANS (§ 32*)—INTRODUCING LIQUORS INTO INDIAN COUNTRY—EFFECT OF TREATY PROVISIONS.

A provision of the treaty with the Yakima Indians that any Indian of the tribes who should bring liquor onto the reservation or drink liquor might have his annuities withheld did not have the effect of reserving to the United States exclusive jurisdiction of lands which were subsequently allotted in severalty to members of the tribes.

[Ed. Note.—For other cases, see Indians, Cent. Dig. §§ 61, 62; Dec. Dig. § 32.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

On Demurrer to Indictment.

A. G. Avery, U. S. Atty., and Joseph B. Lindsley, Asst. U. S. Atty. Charles D. Cromlen, for defendants.

WHITSON, District Judge. The defendants stand indicted under section 2139 Rev. St. as amended by the act of January 30, 1897, c. 109, 29 Stat. 506, for having introduced ardent spirits and intoxicating liquor upon a certain Indian allotment made under the act of February 8, 1887, c. 119, 24 Stat. 388, and within the boundaries of the Yakima Indian Reservation. A demurrer raises the question whether the acts charged constitute a crime. While it does not appear from the indictment, upon argument it was conceded that the allotment referred to was made prior to the amendatory act of May 8, 1906, c. 2348, 34 Stat. 182, which in terms retains jurisdiction over allottees until the expiration of the trust period and issuance of the final patent.

The decision in the Matter of Heff, 197 U. S. 488, 25 Sup. Ct. 506, 49 L. Ed. 848, settled several questions which had theretofore been obscure: First. Under the act of 1887, the completion of the allotment and the issuance of the preliminary patent conferred citizenship upon the allottee. Second. Allottees, being citizens of the United States, are also citizens of the state in which they reside, and since the act provides that they shall be subject to the laws, both civil and criminal, of that state, the act of January 30, 1897, can no longer be enforced as against the sale of intoxicants to such allottees. Third. The status of citizenship once conferred upon the Indians it is beyond the power of Congress to resume its control and guardianship without the consent of the individual Indian and the state. Fourth. The sale of intoxicating liquors is a police regulation which may no longer be enforced as to those who have become citizens by virtue of having received allotments, for by the same act which conferred citizenship Congress parted with its control of those matters which fall within the police power. Fifth. The general police power is reserved to the states, subject to the limitation that they may not trespass on the rights and powers vested in the national government.

Counsel, while conceding these propositions, would sustain the indictment upon grounds claimed to be in harmony with them. The position of the prosecution, as I understand it, is concisely and ably stated in a brief of the Solicitor General (filed in another case), which the District Attorney has adopted as a part of his argument. Briefly, it is this: The title to allotted lands during the period for which they are held in trust being in the United States, it may control those lands even to the extent of establishing police regulations over them.

Reliance is had upon United States v. Rickert, 188 U. S. 432, 23 Sup. Ct. 478, 47 L. Ed. 532, and Rainbow et al. v. Young, Sheriff (C. C. A.) 161 Fed. 835, and particularly upon the case first mentioned; and the contention is based generally upon those decisions of the Supreme Court which uphold the power of Congress to dispose of and make all needful rules and regulations respecting the public domain, such as Gibson v. Chouteau, 13 Wall. 92, 20 L. Ed. 534, Jourdan v. Barrett, 4 How. 168, 11 L. Ed. 924, and Camfield v. United States,

167 U. S. 518, 17 Sup. Ct. 864, 42 L. Ed. 260, and upon the powers vested in the federal government for the enforcement and execution of the laws as declared in Ex parte Siebold, 100 U. S. 371, 25 L. Ed. 717, In re Neagle, 135 U. S. 1, 10 Sup. Ct. 658, 34 L. Ed. 55, In re Debs, 168 U. S. 564, 15 Sup. Ct. 900, 39 L. Ed. 1092, and Ohio v. Thomas, 173 U. S. 276, 19 Sup. Ct. 453, 43 L. Ed. 699. But none of those cases go to the extent of holding that the police power is not wholly within state authority except where it is incidental to and necessary for enforcing the laws of the United States or the protection of property over which it has exclusive control.

United States v. Rickert, supra, cannot be construed as announcing anything beyond the power to interfere for the exemption of allotted lands from local or state taxation. Clearly this is the principle upon which the decision rests, for "no authority exists for the state to tax lands which are held in trust by the United States for the purpose of carrying out its policy in reference to these Indians" is the language of the Supreme Court. And in the discussion of that case in the Matter of Heff, supra, it was said:

"But the fact that property is held subject to a condition against alienation does not affect the civil or political status of the holder of the title."

We have seen that the Supreme Court has designated the statute under which the defendants are indicted as a police regulation, but it was dealing with the sale of liquor to an allotted Indian, and not with the prohibition against the introduction of intoxicating liquors into the Indian country. If that phase of the statute also may properly be so construed, there would seem to be no ground upon which the indictment can be sustained, unless it be in the enforcement of such police regulations as the United States is entitled to invoke for the protection of its own property.

In the License Cases, 5 How. 504, 12 L. Ed. 256, speaking of the police power, it was said:

"Without attempting to define what are the peculiar subjects or limits of this power, it may safely be affirmed that every law for the restraint and punishment of crime, for the preservation of public peace, health, and morals, must come within this category."

So in the Slaughterhouse Cases, 16 Wall. 36, 21 L. Ed. 394, it was thus referred to:

"This power is, and must be from its very nature, incapable of any very exact definition or limitation. Upon it depends the security of social order, the life and health of the citizen, the comfort of an existence in a thickly populated community, the enjoyment of private and social life, and the beneficial use of property."

We are not left, however, to the necessity of deduction from abstract principles, but have the aid of their specific application to the very matter here in issue.

Ex parte Dick, 141 Fed. 5, 72 C. C. A. 667, arose out of an indictment for introducing liquor into the Indian country. The Circuit Court of Appeals (Ninth Circuit), in discussing the jurisdiction, said:

"We do not think that Congress can reserve or exercise such police power within the territorial limits of a state. The police power of the United States

can only be exercised where the legislative authority of Congress excludes territorially all state legislation. United States v. De Witt, 9 Wall. 41, 45, 19 L. Ed. 593; Slaughterhouse Cases, 16 Wall. 36, 64, 21 L. Ed. 394."

And so the statute was construed in United States v. Boss (D. C.) 160 Fed. 132, and perhaps counsel do not seriously contend to the contrary.

This extended reference has been made for the purpose of emphasizing the only possible ground upon which the offense charged may be punished under existing laws. It is true that the Supreme Court in Dick v. United States, 208 U. S. 340, 28 Sup. Ct. 399, 52 L. Ed. 520, did not agree with the Circuit Court of Appeals, but the difference of opinion was not based upon the construction of statutes, but upon a treaty stipulation with the Nez Perce Indians; otherwise the decisions are in harmony.

The defendants having been held, therefore, to answer for the violation of a police regulation upon land duly identified and set apart, it remains to inquire whether the United States has jurisdiction to invoke the police power in view of the citizenship of the Indian upon whose allotment the liquor was taken. The prevention of waste, the inhibition against alienation which might lead to complications and thereby impair the convenient carrying out of the object in view, namely, to transfer the land unincumbered, and like remedies are rights existing by virtue of the legal title which the United States still holds, and which were designated by the Supreme Court in the Matter of Heff, supra, as "mere property rights" which "do not affect the civil or political status of the allottees." The authority to protect the land which is ultimately to be conveyed may be asserted, but control over the Indian, which is purely a matter of state concern, referable to the police power, has been surrendered, and he cannot be deprived of rights which are conceded to other citizens. The allotment segregates the land. This conclusion follows the reasoning of Judge Hanford in United States v. Four Bottle of Sour Mash Whiskey (D. C.) 90 Fed. 720. The taking of liquor onto an allotment affects neither the title nor the possession. If it could be considered as affecting the latter, it would hardly come within the provisions of the statute, which must be strictly construed. Allotted land, coupled with citizenship of the allottee, can no longer be deemed Indian country within the meaning of that term as used by Congress and construed by the courts. Ex parte Crow Dog, 109 U. S. 556, 3 Sup. Ct. 396, 27 L. Ed. 1030; United States v. Martin (D. C.) 14 Fed. 817; Forty-three Gallons of Cognac Brandy (C. C.) 11 Fed. 47. Again, the law relates solely to the good order, quietude, and peace of the community. The legislation was intended to prevent disorderly conduct, and to restrain the Indians from excesses. The plausible argument of federal control, by any process of reasoning which may be applied, leads always to the protection of the Indian and not to the preservation of his property. So long as a place is within the exclusive jurisdiction of the United States, the police power may be exercised by it, but when once surrendered it belongs to the states when not necessary for the assertion of those things which are national. To sustain the indictment upon the ground contended for would present the anomaly of a judicial declaration that one citizen

may be denied privileges granted to another, and would be equivalent to holding that, over every parcel of public land claimed or unclaimed, it is competent for Congress to provide for the exercise of police powers within the states; and this would amount to a distinct invasion of their domestic concerns with which it is not, cannot be, concerned. Allotted Indians either are or are not citizens. The Supreme Court has taken Congress at its word and declared that they are. Once invested with that dignity, in the absence of treaty stipulations, they are entitled to all the rights, privileges, and immunities of other citizens, and the courts may not discriminate against them. The language of the Supreme Court, in United States v. Dick, supra, as applied to the issue here for decision, is significant, and, as I read it, decisive:

"If this case depended alone upon the federal liquor statute forbidding the introduction of intoxicating drinks into the Indian country, we should feel obliged to adjudge that the trial court erred in not directing a verdict for the defendant, for that statute, when enacted, did not intend by the words 'Indian country' to embrace any body of territory in which, at the time, the Indian title had been extinguished, and over which and over the inhabitants of which (as was the case of Culdesac) the jurisdiction of the state, for all purposes of government, was full and complete. Bates v. Clark, 95 U. S. 204, 24 L. Ed. 471; Ex parte Crow Dog, 109 U. S. 556, 561, 3 Sup. Ct. 396, 27 L. Ed. 1030."

Reference has been made to article 9 of the treaty with the Yakima Indians (12 Stat. 954), said to bring the case within the rule of the last-mentioned decision. That article reads as follows:

"The said confederated tribes and bands of Indians desire to exclude from their reservation the use of ardent spirits, and to prevent their people from drinking the same, and, therefore, it is provided that any Indian belonging to said confederated tribes and bands of Indians, who is guilty of bringing liquor into said reservation, or who drinks liquor, may have his or her annuities withheld from him or her for such time as the President may determine."

Article 9 of the treaty with the Nez Perce Indians (28 Stat. 330, c. 290) reads:

"It is further agreed that the lands by this agreement ceded, those retained, and those allotted to the said Nez Perce Indians, shall be subject for a period of twenty-five years to all the laws of the United States prohibiting the introduction of intoxicants into the Indian country, and that the Nez Perce Indian allottees, whether under the care of an Indian agent or not, shall, for a like period, be subject to all the laws of the United States prohibiting the sale or other disposition of intoxicants to Indians."

It will be observed that in the case of the latter the jurisdiction of the United States was expressly retained, while as to the former the sole provision was that annuities could be withheld for such time as the President might determine. Besides, the defendants are not Indians. There is no analogy between the treaty stipulations which will bring that made with the Yakimas within the decision of the Supreme Court, or which will justify a construction that the treaty was intended to be other than it purports to be upon its face. Aside from considerations which deny the jurisdiction on principle, this court is concluded not only by the decision of the Supreme Court, but by the appellate court to which it is directly amenable.

Treating the stipulation of counsel concerning the time of the allotment as within the indictment, the demurrer must be sustained and

the defendants discharged; but if it is the purpose to seek a review in the appellate court, an appropriate order will be made for securing their attendance should the views here expressed not meet with approval.