## COMMONWEALTH *vs.* ABE STRAUSS.

Plymouth.　March 22, 1906. — May 16, 1906.

Present: KNOWLTON, C. J., MORTON, LATHROP, BRALEY, & SHELDON, JJ.

*Unfair Competition. Sale. Constitutional Law,* Police power, Interstate commerce. *Words,* "Exclusive sale."

In R.-L. c. 56, § 1, making it a criminal offence to make it a condition of the sale of goods that the purchaser shall not sell or deal in the goods of any person other than the seller, but stating that "the provisions of this section shall not prohibit the appointment of agents or sole agents for the sale of, nor the making of contracts for the exclusive sale of, goods, wares or merchandise," the term "exclusive sale" means selling within a prescribed territory to the exclusion of all other persons so that in the designated place the purchaser from the original seller will have control of the market for resale, and the excepting clause does not permit a sale upon the condition that the purchaser shall sell the goods of the seller and shall not sell the goods of any other person.

At the trial of an indictment against the agent of a tobacco company, under R. L. c. 56, § 1, making it a criminal offence to make it a condition of the sale of goods, that the purchaser shall not sell or deal in the goods of any person other than the seller, the defendant asked for a ruling, that if the defendant named a price at which he would sell his employer's tobacco, and then stated to the person proposing to purchase, that if he bought or sold no plug tobaccos except that manufactured by the defendant's employer the defendant would return a rebate of six per cent, such statement would not bring the sale within the prohibition of the statute, and the verdict should be "not guilty." There was evidence from which a jury might find that the price named and the rebate offered were such as to be intended by the defendant to operate as a practical refusal to sell any goods except upon a condition which would entitle the purchaser to the rebate, and were understood by the purchaser to be so intended, and there was evidence that it would be impossible for the purchaser to carry on business successfully on the offered terms except by obtaining the rebate by compliance with the condition. The judge refused to make the ruling requested. *Held,* that the refusal was right, the statute being intended to prohibit the imposition of such a condition in an indirect way as well as directly.

The right of a person to earn his livelihood by any lawful calling and to enter into all lawful contracts necessary or proper for that purpose, which is protected by the Fourteenth Amendment of the Constitution of the United States and by articles 1 and 10 of the Declaration of Rights in the Constitution of Massachusetts, is subject to limitation by the proper exercise of the police power by the Legislature.

Nature of the police power discussed by KNOWLTON, C. J.

In determining whether a restriction by the Legislature of the general right to make contracts is a proper exercise of the police power it is necessary to consider whether at the time of the enactment of the statute there were conditions actually existing or reasonably anticipated which called for such legislative intervention in the interest of the general public.

This court cannot say that R. L. c. 56, § 1, making it a criminal offence to make it a condition of the sale of goods that the purchaser shall not sell or deal in the goods of any person other than the seller, is not a proper exercise of the police power.

A proper exercise of the police power by the Legislature of a State, which only indirectly affects interstate commerce is not for that reason unconstitutional under art. 1, § 8, of the Constitution of the United States.

R. L. c. 56, § 1, making it a criminal offence to make it a condition of the sale of goods that the purchaser shall not sell or deal in the goods of any person other than the seller, affecting only contracts made in this Commonwealth and designed for the protection of the public within our own boundaries, is not unconstitutional under art. 1, § 8, of the Constitution of the United States, although, where such contracts are made for the sale and transportation of property in another State to a purchaser in this Commonwealth, it puts a limitation on what otherwise would be interstate commerce.

U. S. St. July 2, 1890, c. 647, called the federal anti-trust law, which deals only with contracts which directly affect interstate or foreign commerce by way of restraint of trade or the creation of a monopoly, does not affect the validity of R. L. c. 56, § 1, making it a criminal offence to make it a condition of the sale of goods that the purchaser shall not sell or deal in the goods of any person other than the seller.

INDICTMENT, found and returned in the Superior Court for the county of Plymouth on June 6, 1904, under R. L. c. 56, § 1, for selling plug tobaccos at Brockton and Bridgewater on January 1, 1904, making it a condition of each sale that the purchaser should not sell or deal in the plug tobaccos of any other person, firm, corporation or association of persons.

At the first trial of the case in the Superior Court the jury returned a verdict of guilty, and exceptions alleged by the defendant were sustained by this court in a decision reported in 188 Mass. 229.

There was a new trial of the case before *Gaskill,* J. The material facts which the jury were warranted in finding on the evidence are stated in the opinion.

At the close of the evidence the defendant asked the judge to make the following rulings :

" 1. The statute under which the defendant is indicted is unconstitutional because it is in conflict with the Fourteenth Amendment to the Constitution of the United States.

" 2. The statute under which the defendant is indicted is unconstitutional because it is in conflict with article I. and article X. of paragraph the first of the Constitution of the Commonwealth of Massachusetts.

" 3. If the jury believes that orders given to the defendant for plug tobacco were submitted by him to an office of the Continental Tobacco Company outside of the Commonwealth of Massachusetts, to be there accepted or rejected, and that upon acceptance thereof plug tobacco was shipped to the merchant from outside the State, then the statute under which the defendant is indicted would, as sought to be applied to such an act, be unconstitutional, because in conflict with section 8 of article I. of the Constitution of the United States.

" 4. If the jury believes that the defendant named a price at which the plug tobaccos of his employer would be sold, and then stated to the merchant that if he, the merchant, bought or sold no plug tobaccos except that manufactured by the defendant's employer, he would return a rebate of six per cent, such statement would not be a sale of goods on condition that the purchaser should not sell or deal in the goods of any other person, firm, corporation, or association of persons, and the verdict should be not guilty.

" 5. Upon all the evidence the jury should return a verdict of not guilty.

" 6. If the jury believes that the condition made by the defendant was that the merchant should deal exclusively in the plug-tobacco products of the Continental Tobacco Company, the employer of the defendant, then the act of the defendant would not be a violation of the statute, and your verdict should be not guilty.

" 7. Upon all the evidence there should be a verdict of not guilty upon the first count, it appearing that the witness Dutra did not accept the offer of better terms on condition that he would sell the plug tobacco of the Continental Tobacco Company exclusively."

The judge refused to rule as requested, and among other matters gave special instructions in regard to the first count referred to in the seventh request, which have become immaterial because the point was not argued by the defendant. The conclusion of the charge was as follows:

" So, gentlemen, I instruct you as matter of law that if the defendant, as a condition of the sale in each of these cases, made use of such a condition attached to the sale as he knew

and believed would be virtually prohibitive to the purchaser from getting his company's goods, and if he intended that it should so operate, and the purchaser so understood it, then that would constitute a violation of the statute. If you are satisfied beyond fair and reasonable doubt of that, you should convict; otherwise you should not."

The jury returned a verdict of guilty; and the defendant alleged exceptions.

*J. Parker*, (of New York) (*F. M. Bixby* with him,) for the defendant.

*Asa P. French*, for the Commonwealth.

KNOWLTON, C. J. This case has once before been considered by this court, upon a question which does not now arise. *Commonwealth* v. *Strauss*, 188 Mass. 229. The questions first to be considered at this time relate to the construction of R. L. c. 56, § 1, under which the defendant was indicted. The section is quoted at length in the case just cited. The prohibitive part is as follows: " A person, firm, corporation or association of persons, doing business in this Commonwealth, shall not make it a condition of the sale of goods, wares or merchandise that the purchaser shall not sell or deal in the goods, wares or merchandise of any other person, firm, corporation or association of persons ; but the provisions of this section shall not prohibit the appointment of agents or sole agents for the sale of, nor the making of contracts for the exclusive sale of, goods, wares or merchandise."

The defendant contends that a contract that the purchaser shall sell the goods of the seller, and shall not sell the goods of any other person, is a contract for the exclusive sale of the goods, and is therefore permitted by the statute. Such a construction would leave the statute without effect. The term " exclusive sale " must be given a meaning which is not inconsistent with other provisions of the act. As used here it means selling within a prescribed territory, to the exclusion of all other persons, so that in the designated place the purchaser who makes such a contract with the original seller will have the control of the market for resale. The facts of this case show no arrangement for an exclusive sale of the defendant's goods by either of the purchasers, within the meaning of the statute.

The request for a direction of a verdict of not guilty on the first count, upon grounds which do not pertain to the other counts, has not been argued by the defendant, and is treated by both parties as not now important.

The fourth request for a ruling was, in substance, that if the defendant named a price at which he would sell his employer's tobacco, and then stated to the person proposing to purchase " that if he, the merchant, bought or sold no plug tobaccos except that manufactured by the defendant's employer the defendant would return a rebate of six per cent, such statement would not be a sale of goods on condition that the purchaser should not sell or deal in the goods of any other person, firm, corporation or association of persons, and the verdict should be not guilty." This presents a question which was referred to, but not decided, when the case was formerly considered by this court.

There was evidence from which the jury might find that the price named and the rebate offered were such as were intended by the defendant as a practical refusal to sell any goods, except upon a condition which would entitle the purchaser to the rebate, and were understood by the purchaser to be so intended. Witnesses testified that it would be impossible for the purchasers to carry on business successfully on the offered terms, except upon compliance with this condition which would bring the rebate. Upon the whole evidence the judge could not say, as matter of law, that the defendant did not understand his offer and intend it to be interpreted by his customers as an offer to sell only on condition that they would agree not to sell the goods of others, and that the proposal of the price without a rebate was not intended by the defendant and understood by his customers as an evasion and subterfuge which nobody would act upon, except with the understanding on the part of both that there should be no sale of the goods of others. We think the statute was intended to prevent the imposition of the condition in this indirect way, as much as if the seller had said, categorically, " I will sell you no goods except upon this condition." This request for a ruling was rightly refused.

We are brought now to a consideration of the objections to the statute on constitutional grounds. The defendant con-

tends, first, that the statute is in conflict with the Fourteenth Amendment of the Constitution of the United States ; secondly, that it is in conflict with articles 1 and 10 of the Declaration of Rights in the Constitution of Massachusetts; and thirdly, that, in its application to the facts of this case, it is in conflict with art. 1, § 8, of the Constitution of the United States.

The rights relied upon under the Fourteenth Amendment to the Constitution of the United States, and under the Declaration of Rights in the Constitution of Massachusetts, are substantially the same, namely, the right of every person to his life, liberty and property, including freedom to use his faculties in all lawful ways, " to live and work where he will; to earn his livelihood by any lawful calling; to pursue any livelihood or avocation, and for that purpose to enter into all contracts which may be proper, necessary and essential to his carrying out to a successful conclusion the purposes above mentioned." See *Allgeyer* v. *Louisiana*, 165 U. S. 578, 589. These rights, however, are subject to limitations, arising under the proper exercise of the police power, by the Legislatures of the respective States. This power, as recognized under the Constitution of the United States, does not differ materially from that established under the broad language of the Constitution of Massachusetts, found in c. 1, art. 4, which gives ample legislative authority, and at the same time keeps it within the boundaries of individual constitutional rights.

There is no doubt that the statute before us puts a limitation upon the general right to make contracts. The contention of the Commonwealth is that this limitation is valid as an exercise of the police power. The nature of the police power and its extent, as applied to conceivable cases, cannot easily be stated with exactness. It includes the right to legislate in the interest of the public health, the public safety and the public morals. If the power is to be held within the limits of the field thus defined, the words should be interpreted broadly and liberally. If we are to include in the definition, as many judges have done, the right to legislate for the public welfare, this term should be defined with some strictness, so as not to include everything that might be enacted on grounds of mere expediency. In the very late case of *Lochner* v. *New York*, 198 U. S. 45, 53, the

majority of the court said, " Those powers, broadly stated and without, at present, any attempt at a more specific limitation, relate to the safety, health, morals and general welfare of the public." In the opinion in *Louisville & Nashville Railroad* v. *Kentucky*, 161 U. S. 677, 701, we find this language: " The general rule holds good that whatever is contrary to public policy or inimical to the public interests is subject to the police power of the State, and within legislative control, and in the exertion of such power the Legislature is vested with a large discretion, which, if exercised *bona fide* for the protection of the public, is beyond the reach of judicial inquiry."

It becomes necessary to look somewhat critically at the statute before us, to discover its effect upon the rights of contracting parties, and the purpose of the Legislature in enacting it. In the sale of goods to be resold it forbids one kind of contract which might be made in competition with other sellers of similar goods. It leaves open every other kind of contract. We may infer that the Legislature was providing for cases in which this particular kind of contract would be unfair competition as against weaker dealers, and would be injurious to the public as tending to crush ordinary competitors, and thus create a monopoly, from which the community as consumers would ultimately suffer. If, at the time of the enactment of this statute, there were dangers of this kind confronting the people of the Commonwealth, and if this prohibition is a reasonable way of averting such dangers, we find justification for the legislation, unless it involves a serious injury to those who are restrained by it. It permits every kind of contract of sale but one. It does not prohibit the appointment of agents, or sole agents, for the sale of property. It allows contracts for the exclusive sale of goods, wares or merchandise. The contracts that it forbids are only those which, in ordinary competition among equals, no one would have any interest or desire to make. As a rule, it is only a person or corporation that is entrenched in a position of power that can afford to say to a retailer or jobber " I will not let you have my goods unless you will agree to sell none furnished by others." One who controls the sources of supply of goods, which are in such demand that a dealer cannot afford to be without them, can safely say to a purchaser " You

552 COMMONWEALTH v. STRAUSS. [191

must give me all your trade if you want to sell any of my goods." In .that way he may be able to obtain a complete monopoly of the trade in goods such as he supplies.

The evidence in this case illustrates some of the tendencies of the times. The defendant's employer, the Continental Tobacco Company, is incorporated with a capital stock of $75,000,000. At the time of the sales for which the defendant is indicted it had absorbed more than twelve establishments used for the manufacture and sale of plug tobaccos, and owned by as many proprietors. Before its incorporation there was free and open competition in the plug tobacco market in Massachusetts. It so consolidated and restricted the trade that, in January, 1904, it produced about ninety-five per cent of the plug tobacco, and about eighty per cent of the cut plug tobacco in Massachusetts. Conditions were about the same in all parts of the State. There were about two hundred and ten jobbers in Massachusetts, and practically all stopped buying of independent manufacturers when this corporation made this new proposition, presented by the defendant in making the sales complained of. It had acquired such strength in its own field that, by the use of such means as the statute forbade, it could expect easily to obtain a practical monopoly of the plug tobacco trade in Massachusetts. This evidence furnishes an illustration of what we fairly may assume was being done, or might be expected to be done, in the manufacture and sale of other products, even of some of the necessaries of life. Tobacco is not one of the necessaries of life, but its use is so common that to many persons it seems almost as necessary as food. The poor much more than the rich would be likely to be affected by the monopoly of the market for plug tobacco, and a rise in the price which might be expected to follow it.

This statute was not enacted for protection in the purchase of any one kind of property. Its object doubtless was to prevent the use of this particular method of crushing competitors in any kind of trade in which the public might be interested. Especially was it important to prevent monopoly in the sale of the necessaries of life. In view of this, we deem it not unreasonable that the statute was made to apply to sales of all kinds of goods.

Legislation should be adapted to existing conditions. A few years ago there was no occasion for such an enactment. But lately we see great aggregations of capital formed to obtain command, if possible, of the field of production or distribution into which they enter. Even now, in the transaction of business among equals where there is free competition, the statute is unnecessary, for there is no inducement to do that which it forbids. Its practical effect is to prevent great corporations from making a certain kind of contracts intended to drive ordinary competitors out of business.

The question is whether, at the time of the passage of this statute, there were conditions actually existing or reasonably anticipated which called for such legislative intervention in the interest of the general public. We are of opinion that there were, and that, in a broad and liberal sense of the words, this statute was enacted in the interest of the public health and the public safety, if not of the public morals. Certainly the purpose of the Legislature was to promote the general welfare of the public. We cannot say that this legislative action was not a legitimate exercise of the police power. Its invasion of the general right to make contracts is so slight, and in a field so remote from ordinary mercantile transactions, that there is little ground of objection on that score. The abuse at which the statute is aimed, while not practised by many persons, is real and widely pervasive.

As was said by the court in *Lochner* v. *New York*, 198 U. S. 45, 56, on this record "the question necessarily arises: Is this a fair, reasonable and appropriate exercise of the police power of the State, or is it an unreasonable, unnecessary and arbitrary interference with the right of the individual to his personal liberty or to enter into those contracts . . . which may seem to him appropriate or necessary for the support of himself and his family?" Many cases have been decided by the Supreme Court of the United States which, in principle, go far to sustain the contention of the Commonwealth in the present action. *Otis* v. *Parker*, 187 U. S. 606. *Atkin* v. *Kansas*, 191 U. S. 207. *Knoxville Iron Co.* v. *Harbison*, 183 U. S. 13. *Mugler* v. *Kansas*, 123 U. S. 623. *Patterson* v. *Kentucky*, 97 U. S. 501. *Holden* v. *Hardy*, 169 U. S. 366. *Jacobson* v. *Massachusetts*,

197 ·U. S. 11. Similar doctrines have often been stated in our own decisions. *Opinion of the Justices,* 163 Mass. 589, 592, 593. *Watertown* v. *Mayo,* 109 Mass. 315, 318. *Commonwealth* v. *Danziger,* 176 Mass. 290. *Commonwealth* v. *Pear,* 183 Mass. 242. *Squire* v. *Tellier,* 185 Mass. 18. In other States a few of the cases are the following: *Thorpe* v. *Rutland & Burlington Railroad,* 27 Vt. 140, 149; *Burdick* v. *People,* 149 Ill. 600; *State* v. *Peel Splint Coal Co.* 36 W. Va. 802; *Commonwealth* v. *Reinecke Coal Mining Co.* 117 Ky. 885; *Avent Beattyville Coal Co.* v. *Commonwealth,* 96 Ky. 218; *State* v. *Kreutzberg,* 114 Wis. 530, 549. Some of them are in support of so called anti-trust laws. *Fuqua* v. *Pabst Brewing Co.* 90 Tex. 298. *State* v. *Schlitz Brewing Co.* 104 Tenn. 715, 745. *State* v. *Buckeye Pipe Line Co.* 61 Ohio St. 520. *State* v. *Firemen's Ins. Co.* 152 Mo. 1.

The defendant contends that the statute is invalid as an interference with interstate commerce, in contravention of art. 1, § 8, of the Constitution of the United States. The decisions of the Supreme Court of the United States which deal with the police power in its relation to the constitutional provision for the regulation of interstate commerce are numerous. As we understand them, the questions of difficulty in the present case are substantially the same, under this clause of the Constitution, as under that which we have already considered. This statute does not attempt directly to regulate interstate commerce, or to deal with it in any way. Indirectly it affects it in those cases where contracts are made for the sale and transportation of property in another State to a purchaser in this State. The statute does not purport to tax interstate commerce, or directly to impose any burden upon it. If it did, it would be unconstitutional. *Robbins* v. *Shelby County Taxing District,* 120 U. S. 489, 493. *Brennan* v. *Titusville,* 153 U. S. 289.

It purports to be an act passed in the exercise of the police power, affecting only contracts made in this Commonwealth, and designed for the protection of the public within our own boundaries. We understand the question on this part of the case to be, is this a legitimate exercise of the police power, or is it an unauthorized interference with legitimate interstate commerce. Under the decisions in *Plumley* v. *Massachusetts,* 155 U. S. 461, *Commonwealth* v. *Huntley,* 156 Mass. 236, and

*Hennington* v. *Georgia*, 163 U. S. 299, if this statute can fairly be called an exercise of the police power upon a subject in regard to which the States have a right to legislate, the fact that it puts a limitation on what would otherwise be interstate commerce does not render it invalid. That it is a legitimate exercise of the police power we have endeavored to show upon the other branch of the case. If we have been successful in our endeavor, this objection of the defendant is not well founded. See also as bearing on this question *Sherlock* v. *Alling*, 93 U. S. 99, 103, 104 ; *Chicago, Milwaukee & St. Paul Railway* v. *Solan*, 169 U. S. 133, 137 ; *Missouri, Kansas & Texas Railway* v. *Haber*, 169 U. S. 613, 625, 637 ; *Morgan's Steamship Co.* v. *Louisiana Board of Health*, 118 U. S. 455, 463, 465 ; *Richmond & Alleghany Railroad* v. *Patterson Tobacco Co.* 169 U. S. 311 ; *Western Union Telegraph Co.* v. *James*, 162 U. S. 650.

The enactment of the federal anti-trust law, so called, (U. S. St. of July 2, 1890, c. 647,) does not affect the validity of this statute. That law deals only with contracts which directly affect interstate or foreign commerce by way of restraint of trade or the creation of a monopoly, and does not touch contracts which affect interstate commerce only indirectly. *Anderson* v. *United States*, 171 U. S. 604, 615. *United States* v. *Joint Traffic Assoc.* 171 U. S. 505, 568. *Addyston Pipe & Steel Co.* v. *United States*, 175 U. S. 211, 228. It has been decided that a contract similar to those which appear in the present case is not within the federal statute. *Whitwell* v. *Continental Tobacco Co.* 125 Fed. Rep. 454. By this enactment the Congress has not attempted to cover the field in which the statute in question belongs. The right of the State to protect its citizens in the way here attempted is not taken away by the federal law.

We are of opinion that the objections to the constitutionality of the statute are not well founded.

*Exceptions overruled.*