# SUPPLEMENT.

## OPINION OF THE JUSTICES TO THE SENATE.

A statute restricting the rights of contract of the owners of letters patent from the United States as distinguished from the owners of other property would not be constitutional.

The enactment of a statute of general application, including persons entitled to rights under letters patent from the United States with the rest of the community, which has the effect of preventing the holder of a monopoly derived from letters patent from imposing conditions on the sale or lease of the patented article which create other monopolies not granted to him by federal authority, is within the police power of the Legislature. KNOWLTON, C. J. & MORTON, J., differing in opinion from the other justices.

It is within the constitutional power of the Legislature to enact a law of general application producing the result that the owner of or a licensee under letters patent of the United States, doing business in this Commonwealth, shall not lease and license the use of machines embodying the patented invention, upon conditions which are, when agreed to by the lessee and licensee, in effect, a prohibition upon the lessee and licensee from obtaining of any person other than the lessor and licensor machines for performing the same operation as that performed by the leased and licensed machine, during the term of such lease and license. KNOWLTON, C. J. & MORTON, J., differing in opinion from the other justices.

It is within the constitutional power of the Legislature to enact a law of general application producing the result that the owner of or a licensee under letters patent of the United States, doing business in this Commonwealth, where he has certain patented machines designed to perform two certain successive steps in making an article or product, shall not lease and license the use of one of the machines, which is designed to perform one of the steps, upon conditions which are, when agreed to by the lessee and licensee, in effect a prohibition upon the lessee and licensee from using, in the manufacture of such article or product, the leased and licensed machine, if a machine not obtained from the lessor and licensor is or is to be used to perform the other of the steps, during the term of the lease and license. KNOWLTON, C. J. & MORTON, J., differing in opinion from the other justices.

It is within the constitutional power of the Legislature to enact a law of general application producing the result that the owner of or a licensee under letters patent of the United States, doing business in this Commonwealth, shall not lease and license the use of a machine embodying the patented invention, upon the conditions, when agreed to by the lessee and licensee, that the latter, as

rental for the machine and as royalty for the use of the patented invention, shall purchase from the lessor exclusively material or merchandise to be used in the machine, during the term of such lease and license. KNOWLTON, C. J. & MORTON, J., differing in opinion from the other justices.

ON April 12 and 15, 1907, the following orders were passed by the Senate, and on April 17 were transmitted to the Justices of the Supreme Judicial Court. On April 30, 1907, the Justices returned the answers which are subjoined:

Senate, April 12, 1907.

ORDERED, That the opinion of the Justices of the Supreme Judicial Court be required upon the following important questions of law:

First. Is it within the constitutional power of the Legislature to enact a law that the owner of or a licensee under letters' patent of the United States, doing business in this Commonwealth, shall not lease and license the use of machines embodying the patented invention, upon conditions which are, when agreed to by the lessee and licensee, in effect, a prohibition upon the lessee and licensee from obtaining of any other person than the lessor and licensor machines for performing the same operation as that performed by the leased and licensed machine, during the term of such lease and license?

Second. Is it within the constitutional power of the Legislature to enact a law that the owner of or licensee under letters patent of the United States, doing business in this Commonwealth, where he has certain patented machines designed to perform two certain successive steps in making an article or product, shall not lease and license the use of one of said machines, which is designed to perform one of said steps, upon conditions which are, when agreed to by the lessee and licensee, in effect a prohibition upon the lessee and licensee from using, in the manufacture of said article or product, the leased and licensed machine, if a machine not obtained from the lessor and licensor is or is to be used to perform the other of said steps, during the term of said lease and license?

Third. Is it within the constitutional power of the Legislature to enact a law that the owner of or a licensee under letters

patent of the United States, doing business in this Common-wealth, shall not lease and license the use of a machine embody-ing the patented invention, upon the conditions, when agreed to by the lessee and licensee, that the latter, as rental for the ma-chine and as royalty for the use of the patented invention, shall purchase from the lessor exclusively material or merchandise to be used in the machine during the term of such lease and license ?

These questions are propounded with a view to legislation, which is the subject matter of a pending bill, Senate Bill, No. 275, to regulate the lease and sale of machinery, tools, implements and appliances which embody one or more inven-tions patented pursuant to the Constitution of the United States and the laws enacted by Congress in respect to letters patent for inventions, in view of the fact that, for many years, contracts have been made by owners of patented machines, doing business in this Commonwealth, in which the lessee and licensee has agreed to do all the work which he has to do upon the leased and licensed machine; and, in case he has too much work for that machine, to take from the lessor under that lease, or a similar lease, sufficient additional machines to do his work; to pay the lessor, as rent or royalty for the use of the machine, certain sums in cash, or to purchase exclusively of the lessor material or merchandise for use in the machine, such as fasten-ings for use in a button fastening machine, eyelets or hooks in an eyelet or hook setting machine, tacks in a tack driving ma-chine, or records in a phonograph or talking-machine ; and, in some cases, where the lessor has other machines designed to perform successive steps in making an article or product, the lessee and licensee has agreed to use the leased and licensed machine only on an article or product in making which one or more of the lessor's other patented machines are used.

A copy of the Senate Bill, No. 275, now pending before the Senate, is hereby ordered to be transmitted herewith to the Jus-tices of the Supreme Judicial Court, together with briefs and opinions of counsel which were filed with the Joint Committee on the Judiciary at the hearing on the petitions on which the said bill is based.

SENATE BILL NO. 275.

## AN ACT

To regulate the Lease and Sale of Machinery, Tools, Implements and Appliances.

*Be it enacted, etc.*

SECTION 1.  No person, firm, corporation or association shall insert in or make it a condition or provision of any sale or lease of any tool, implement, appliance or machinery that the purchaser or lessee thereof shall not buy, lease or use machinery, tools, implements or appliances or material or merchandise of any person, firm, corporation or association other than such vendor or lessor, but this provision shall not impair the right, if any, of the vendor or lessor of any tool, implement, appliance or machine protected by a lawful patent right vested in such vendor or lessor to require by virtue of such patent right, the vendee' or lessee, to purchase or lease from such vendor or lessor such component and constituent parts of said tool, implement, appliance or machine, as the vendee or lessee may thereafter require during the continuance of such patent right: *provided*, that nothing in this act shall be construed to prohibit the appointment of agents or sole agents to sell or lease machinery, tools, implements or appliances.

SECTION 2.  Any person, firm, corporation or association, or the agent of any such person, firm, corporation or association, violating the provision of this act, shall be punished for each offence by a fine not exceeding five thousand dollars.

All leases, sales or agreements therefor hereafter made in violation of any of the provisions of this act shall be void as to any and all of the terms or conditions thereof so in violation of said provisions of this act.

Senate, April 15, 1907.

ORDERED, That the opinion of the Justices of the Supreme Judicial Court be required upon the following important question of law:

Is it a constitutional exercise of the legislative power of the General Court to enact a statute in the following form, viz. :

[Here was inserted a copy of Senate Bill No. 275, printed above.]

ORDERED, That copies of the briefs submitted to the Joint Committee on the Judiciary by counsel for the petitioners for such legislation, and of counsel for the remonstrants thereto, be transmitted herewith to the Justices of the Supreme Judicial Court.

To the Honorable the Senate of the Commonwealth of Massachusetts :

We, the undersigned Justices of the Supreme Judicial Court, are of opinion that if we take the three questions stated in your order of April 12, 1907, to refer to a law which in terms should relate to an owner of or a licensee under letters patent of the United States as distinguished from owners of other property and accordingly would not be of general application, then the questions must be answered in the negative. If, however, they are to be taken to refer to general legislation which should simply include persons entitled to rights under such letters patent with the rest of the community, we are of opinion that they should be answered in the affirmative. We are also of opinion that a statute in the form annexed to your order of April 15, 1907, would be constitutional, and that the question contained in that order must be answered in the affirmative.

It seems to us to be important to remember that the right secured by letters patent of the United States is the right of a monopoly of the invention described therein. With this right a State has no power to interfere by its legislation ; nor has it the power to interfere with the exercise of any right which is necessarily incident to the exercise of that principal right. But we think that it is equally clear, as was stated by Mr. Justice Harlan in *Patterson* v. *Kentucky*, 97 U. S. 501, " that the right which the patentee or his assignee possesses in the property created by the application of a patented discovery must be enjoyed subject to the complete and salutary power with which the States have never parted, of so defining and regulating the sale and use of property within their respective limits as to

afford protection to the many against the injurious conduct of the few. The right of property in the physical substance, which is the fruit of the discovery, is altogether distinct from the right in the discovery itself, just as the property in the instruments or plate by which copies of a map are multiplied is distinct from the copyright of the map itself." We think also that it is manifest that not every right which in the absence of legislative prohibition can be by contract annexed to the assignment of a patent right, or to a license given thereunder, or to the sale or lease of a patented machine, is therefore to be said to be necessarily incident to the full exercise of the right secured by the patent. We regard it as now settled by the decision of this court in *Commonwealth* v. *Strauss*, 191 Mass. 545, that the power of the Legislature to decide what monopolies in trade should be forbidden as injurious to the general welfare rests upon the same foundation, and (unless limited by some provision in the national Constitution) may be exercised as fully and freely, as its power to legislate for the protection of the public health or the public morals. Unless and until that decision shall be overruled by the Supreme Court of the United States, we are satisfied to follow it.

It is true of course, as has been already said, that the State has no power to interfere with the monopoly given by letters patent of the United States to the holder thereof. As pointed out by Mr. Justice Harlan in *Patterson* v. *Kentucky, ubi supra*, adopting the language of the Supreme Court of Ohio in *Jordan* v. *Dayton*, 4 Ohio, 294, that monopoly is simply the right to prevent others from using the products of his labors except with his consent. His own right of using is not enlarged or affected. In other words, the patentee's right is a monopoly in the invention ; but it does not protect from State legislation any monopoly in other commercial ventures which the owner of the patent may attempt to establish or maintain. But such legislation as that of which we are speaking could have no further operation than to prevent the holder of such a monopoly (which is beyond the control of the Legislature) from extending his power to the creation of other and further monopolies which have not been granted to him by any federal authority, and which we think that the Legislature under its general authority has the power to

prohibit.   The federal government cannot exercise the police power for the protection of the inhabitants of a State.   *United States* v. *Dewitt*, 9 Wall. 41.   If the holders of patent rights are not subject to statutes passed for the protection of the public health or morals, or for the prevention of other monopolies than those which are secured by patents, then they are beyond the reach of any police regulation.   But such a contention cannot be sustained.   *Patterson* v. *Kentucky*, 97 U. S. 501.   *Webber* v. *Virginia*, 103 U. S. 344, 348.   *Allen* v. *Riley*, 203 U. S. 347.

We find nothing in *Heaton Peninsular Button Fastener Co.* v. *Eureka Specialty Co.* 77 Fed. Rep. 288, which seems to us to be at variance with our opinion.   That case simply decides that a stipulation like those here considered may by contract be made incident to a sale of the patented machine.   In the absence of prohibiting legislation we do not doubt this.   What the effect of such a statute would be was not considered in that case.   Nor was that case decided upon any distinction between a patented and an unpatented article. · The discussion rested upon the general right of the owner of any property to dispose of it as he sees fit.   The decision would have been the same if the article had not been patented.   The same may be said of *Bement* v. *National Harrow Co.* 186 U. S. 70.

Our answer is upon the understanding that the proposed legislation is to be applicable to contracts to be made in the future, and is not to affect the obligation of contracts already made.   Nor have we considered the question whether the owner of a patent could be prevented from imposing a condition in giving a license to use his patent that the licensee should not use any infringing contrivance.

While our opinion is that which we have stated, it is of course true that these questions are of federal cognizance, and can be finally determined only by the Supreme Court of the United States.

JOHN W. HAMMOND.
WILLIAM CALEB LORING.
HENRY K. BRALEY.
HENRY N. SHELDON.
ARTHUR PRENTICE RUGG.

April 30, 1907.

To the Honorable the Senate of the Commonwealth of Massachusetts:

We, the Chief Justice and one of the associate justices of the Supreme Judicial Court, have received the questions proposed by the orders of the Honorable Senate, bearing date April 12, 1907, and April 15, 1907, respectively, and we answer them as follows:

These questions arise under the Constitution of the United States, and the only tribunal that can give answers of final authority is the Supreme Court of the United States. They introduce us to a field in which we often find a nice, and sometimes difficult, balancing of considerations, to determine the line of demarcation between the rights of the people, under the Constitution, to make contracts and transact business as they choose, and the right of the State, in the exercise of the police power, to regulate and limit such action for the common good. The general subject was considered in *Commonwealth* v. *Strauss*, 191 Mass. 545, which case is now pending upon a writ of error before the Supreme Court of the United States. The questions before us relate to a subject which is not embraced in the statute then before the court, and which was not referred to by counsel or the justices at any stage of the proceedings in that case. They relate partly to the rights of a patentee to lease or license the use of machines embodying his patented invention.

The patent laws of the United States had their origin in an intention of the framers of the federal Constitution, expressed in § 8 of art. 1 of that instrument, to encourage inventors by giving to a patentee, for a term of years, a monopoly of the use of his invention, with the right to control it absolutely in such a way as he deems best. The right to create a monopoly in the business to which the invention relates, so far as this business can be affected by the use and control of the patent, is thus taken out of the rule of public policy which discourages the creation of monopolies. There has been doubt as to the extent of the right of the State, in the exercise of the police power, to interfere with the use of a patented invention by its owner. We think the true rule is that the issuing of a patent does not authorize its owner to use it in violation of laws enacted in the exercise of the police power for the protection of the public

health, the public safety, or the public morals on subjects other than those relating to the prevention of monopolies and the restraint of trade.   For illustration, the State can prohibit a patentee from making it a condition of a sale of a patented invention that the vendee shall use it for an immoral purpose. *Vannini* v. *Paine*, 1 Har. (Del.) 65.   It can prohibit a patentee of a dangerous invention, such as dynamite, from manufacturing it on premises adjoining a public school house.   It can prohibit a patentee of a dangerous illuminating oil from selling it to the public.   *Patterson* v. *Kentucky*, 97 U. S. 501.   It can require a person engaged in selling machines to take out a license therefor, by a statute which would include, within the requirement, patented machines.   *Webber* v. *Virginia*, 103 U. S. 344, 348.   It can require a person engaged in selling patent rights to file in a public office an authenticated copy of the letters patent.   *Allen* .v. *Riley*, 203 U. S. 347.   *Woods* v. *Carl*, 203 U. S. 358.   Such provisions relate to the public morals, the prevention of frauds or the public safety.   The rights of a patentee are subject to legislation for the protection of these public interests.   See also *People* v. *Russell*, 49 Mich. 617, 619 ; *Palmer* v. *State*, 39 Ohio St. 236, 239 ; *State* v. *Delaware & A. Tel. & Tel. Co.* 47 Fed. Rep. 633 ; *Arbuckle* v. *Blackburn*, 113 Fed. Rep. 616, 627.   A State cannot, for the promotion of the general welfare, cut down the patentee's right to the exclusive enjoyment of his invention from seventeen years to ten years, nor limit or affect his right to have a monopoly of the business to which the patent relates, so far as the use and control of his patent enables him to create and maintain a monopoly.   The right of the State to limit or prevent monopolies that are seriously detrimental to the general welfare is taken away by the Constitution of the United States in favor of inventors in the use of their patents.   *Bement* v. *National Harrow Co.* 186 U. S. 70.   *Columbia Wire Co.* v. *Freeman Wire Co.* 71 Fed. Rep. 302.   *Heaton-Peninsular Button-Fastener Co.* v. *Eureka Specialty Co.* 77 Fed. Rep. 288.   *United States Consolidated Seeded Raisin Co.* v. *Griffin*, 126 Fed. Rep. 364, 370. *Victor Talking Machine Co.* v. *The Fair*, 123 Fed. Rep. 424.

In the application of these principles to the matter before us, we have no hesitation in answering the first and second questions in the negative.   The conditions referred to in them are imposed

for the purpose of maintaining and strengthening the monopoly created by the patent. They are conditions which the patentee has a right to impose, and the lessee or licensee has a right to accept. The effect of the prohibition referred to in the first question is to increase the use of the patented machine, and the prohibition mentioned in the second question has the same effect upon the use of the first patented machine, and a similar effect upon the use of the second patented machine belonging to the same owner. The effect in each case is legitimate, and there is nothing objectionable in the agreement.

The third question introduces another element, namely, an agreement for the exclusive use, in the machine, of material or merchandise purchased of the lessor. Such material presumably is not patented, and it may be of such a kind that this agreement, in connection with the general use of the patented machine under leases from the patentee, will tend to create in him a monopoly of the sale of it. The question whether such an agreement is objectionable in law was considered at length by the United States Circuit Court of Appeals for the Sixth Circuit, in *Heaton-Peninsular Button-Fastener Co.* v. *Eureka Specialty Co.* 77 Fed. Rep. 288, and was answered unanimously in the negative. The patent in that case was upon a machine for fastening buttons upon shoes, and the owner of the patent sold machines, under contracts that they should be used only with metallic fasteners manufactured by the seller. These fasteners were not patented, and the result of the contract was to give the owner of the patent a monopoly of the manufacture and sale of the fasteners. After elaborate reasoning and illustration, the court said: " The monopoly in the unpatented staple results as an incident from the monopoly in the use of [the] complainant's invention, and is therefore a legitimate result of the patentee's control over the use of his invention by others. Depending, as such a monopoly would, upon the merits of the invention to which it is a mere incident, it is neither obnoxious to public policy, nor an illegal restraint of trade."

It is plain that such an agreement, as between the owner and the purchaser of the patented machine, without reference to its effect upon others, would be entirely unobjectionable. The owner might stipulate for a price or royalty to be received

entirely in a stated sum of money, or in part in the profits that he would make in furnishing fasteners at an agreed price for use in the machine. The purchaser, who could not obtain the machine at all except upon such terms as the owner should choose to impose, might as well agree to pay for it in that way as in any other.

The only doubtful question is whether the creation of a monopoly in the manufacture and sale of these fasteners, in its effect upon other manufacturers or upon the general public, is against public policy, as a result not legitimately incidental to the use of the monopoly created by the patent. It is to be noticed at the outset that a monopoly in the manufacture and sale of the fasteners cannot be created unless the patent is of such utility as to compete successfully with other modes of manufacture, and thus to control the business. This is equivalent to saying that it will lower prices, and confer a benefit upon the public through the authorized monopoly involved in the use of it. If a monopoly is created in an article used in the machine, it necessarily depends for its existence, not upon the contract as a contract, but upon the patent behind the contract, which alone makes the demand for it. If the price of the fasteners is kept higher than it would be without the agreement, other manufacturers of them are deprived of profits that they might obtain were it not for the agreement, and the general public, in buying shoes, are obliged to include a price for fasteners furnished by the owner of the patent at a large profit. But this would be only a part of the price put upon the public by the owner of the patent for the benefits conferred by the invention. In its essence it would not differ from the royalty paid for the use of a machine, which is ultimately a charge upon the general public that buys the manufactured product. For these reasons, and for others stated in the opinion in the case just cited, we think the monopoly created in the unpatented material used in the machine is a mere incident to the exercise of his legal rights by the patentee, and is authorized by the patent.

If such a monopoly, created under authority of the Constitution of the United States, is neither " obnoxious to public policy, nor an illegal restraint of trade," there is no foundation for an

exercise of the police power by a State through the enactment of a law to prevent the monopoly.

The doctrine of this decision has been applied by the United States Circuit Court of Appeals in the Second Circuit, in the decision of *Cortelyou* v. *Lowe*, 111 Fed. Rep. 1005. The Supreme Court of the United States, in *Bement* v. *National Harrow Co.* 186 U. S. 70, has also quoted from the opinion with approval. It seems to us that the decision rests upon sound principles, and that it fully covers the third of the questions submitted to us. This question must be answered in the negative.

It remains to consider the act referred to in the second order. We understand the words, "shall not buy, lease or use machinery, tools, implements or appliances, or material, or merchandise," to include any kind of machinery, tools, implements or appliances, or material or merchandise that the parties agree upon and specify, as well as such articles generally, without mention of particulars, so that there would be a violation of the statute, if, in the sale of a patented button fastening machine, there should be a provision that the purchaser should buy of the seller, at a stated price, all the metallic fasteners used in the machine. We interpret the statute in this way because of the common meaning of its words, and because of the statements contained in the first order transmitted to us by the Honorable Senate. Giving the statute this meaning, the answer given to the third question in the first order is applicable to the question in the second order. A statute depriving an owner of a patented machine of his right to provide for a purchase from himself of an unpatented article, to be used in the machine by one to whom he sells the machine, as a condition of his giving a right to use the patent, would be unconstitutional for the reasons already stated.

The decision in *Commonwealth* v. *Strauss*, 191 Mass. 545, is not at variance with this conclusion. The statute under consideration in that case relates to sales of "goods, wares and merchandise." There is nothing in its language to indicate that it was intended to include sales or leases of rights under patents. The sales referred to in it are sales of goods as goods, and of merchandise as merchandise, as distinguished from sales of patented inven-

tions, which include a right ' to create a monopoly. If it in-
cluded sales of patents the statute would be unconstitutional,
and this fact is important in determining its meaning. The
Legislature is presumed to have intended to keep within its con-
stitutional rights, and not to include in its legislation a subject
that is outside of its constitutional authority. When the mean-
ing of a statute would otherwise be doubtful this consideration
is often decisive. The statute will be construed, if possible, in
such a way as to make it constitutional. This principle has
been applied repeatedly to questions like that under considera-
tion. In *Attorney General* v. *Electric Storage Battery Co.* 188
Mass. 239, 241, we find the following statement, with a citation
of the authorities: "It is a rule of law that a statute which
would be unconstitutional as applied to a certain class of cases,
and is constitutional as applied to another class, may be held to
have been intended to apply only to the latter class, if this seems
in harmony with the general purpose of the Legislature." This
statute includes sales of ordinary goods, wares and merchandise
as such, and sales of rights under patents are not within its
provisions.

The act quoted in the order includes sales and leases of
patented machinery. This appears by the statements in the
first order, and also by the language of the act itself, which in-
cludes leases as well as sales, and is applied to articles that are
often patented, namely, tools, implements, appliances and ma-
chinery, as distinguished from ordinary goods, wares and mer-
chandise. It also deals with patented machines by expressly
excepting the right of a vendor of such a machine to provide for
the purchase from himself of constituent parts of the machine
that may afterwards be required. We answer all the questions
in the negative.

MARCUS P. KNOWLTON.<br>JAMES M. MORTON.

April 30, 1907.