UNITED STATES v. FOUR BOTTLES SOUR-MASH WHISKY.

(District Court, D. Washington, E. D.   December 3, 1898.)

1. INDIANS—TITLE TO PUBLIC LANDS—EXTINGUISHMENT OF INDIAN TITLE.

    The government of the United States is the primary source of title to the public lands; the Indians having only a right of occupancy, which may at any time be extinguished by congress.

2. SAME — INTRODUCING LIQUORS INTO INDIAN COUNTRY — MINERAL CLAIMS WITHIN RESERVATION.

    The provisions of the act of July 1, 1898 (St. 2d Sess. 55th Cong. p. 593, c. 545), authorizing the entry of mineral lands in the Colville Indian reservation, in the state of Washington, under the laws of the United States relating to the entry of mineral lands, necessarily gave prospectors and miners the right to explore the reservation for minerals, and authorized citizens who make discovery of valuable minerals therein to locate claims and work them as required to obtain title under the mineral land laws. The effect of such a valid location is to segregate the claim from the reservation, and extinguish the Indian title thereto, which is merely possessory, so that the land embraced in such location ceases to be Indian country, within the meaning of Rev. St. §§ 2139, 2140, and 29 Stat. p. 506, c. 109, prohibiting the introduction of liquors into the Indian country, and becomes subject to the jurisdiction of the state.

3. SAME—TRANSPORTING LIQUOR ACROSS RESERVATION.

    A stock of liquors is not introduced into the Indian country by being transported across a reservation to a place where it may be lawfully sold, and is not subject to seizure while in transit, or after it reaches its destination.

This is a proceeding by the United States for the forfeiture of certain liquors. Heard on demurrer to a plea filed by the claimant.

Wilson R. Gay, U. S. Atty., and C. E. Claypool, Asst. U. S. Atty.

F. C. Robertson, for claimant.

HANFORD, District Judge.   This is a case of seizure under the statutes of the United States prohibiting the introduction of spirituous or other intoxicating liquors into the Indian country. Rev. St. U. S. §§ 2139, 2140; 29 Stat. p. 506, c. 109. The information filed by the United States attorney charges that on the 10th day of August, 1898,

one Daniel P. Bagnell did unlawfully take upon the Colville Indian reservation, in the state of Washington, a stock of spirituous liquors, wines, and malt liquors, and did establish a saloon in a building upon said reservation, contrary to the provisions of sections 2139, 2140, Rev. St. U. S., and afterwards the Indian agent in charge of said reservation did seize and take into his possession as such officer, on behalf of the United States, all of said liquors, together with the stores, packages, and other goods introduced upon the reservation by said Bagnell, found within said saloon; and it concludes with a prayer for a decree that all of said merchandise be condemned as forfeited to the United States. Daniel P. Bagnell has appeared as claimant, and filed an answer and plea, by which he denies that the goods were taken upon the reservation unlawfully. The plea sets forth a provision contained in the act of congress of July 1, 1898, making appropriations for the current contingent expenses of the Indian department, which is as follows:

"That the mineral lands only in the Colville Indian reservation in the state of Washington, shall be subject to entry under the laws of the United States in relation to the entry of mineral lands: provided, that lands allotted to the Indians or used by the government for any purpose or by any school, shall not be subject to entry under this provision." St. U. S. 2d Sess. 55th Cong. p. 593, c. 545.

And it further alleges that under the license, and in the exercise of the rights granted by said act of congress, and in accordance with the general laws relating to the mineral lands of the United States, and the local laws, customs, and regulations of miners, one William Mediking, a citizen of the United States entitled to make location of mineral claims, went upon the said Colville reservation, and made discovery there of gold in paying quantities, and located the ground containing the deposits of gold which he had discovered, and claimed the same by marking the boundaries of his claim, and posting notices describing the same, and in other respects complied with the law so as to acquire a valid right to said claim, and immediately after making such location, on the 20th day of July, 1898, said William Mediking went into the exclusive possession of said claim, and thereafter the claimant, with the consent of said Mediking, erected a house upon said claim, and after obtaining a retail liquor dealer's license from the county within which said reservation is situated, and also from the collector of internal revenue of the United States, he placed in said house the stock of liquors and other merchandise which was seized by the Indian agent, and which is the identical property described in the libel of information; that said seizure was made in the house erected by the respondent upon said mining claim, and at the time of said seizure the claimant had not sold any of said merchandise to any Indian, and it was not intended by him to sell or dispose of intoxicating liquors to Indians, but said merchandise was placed in said house to be sold to white people only. The case has been argued and submitted upon a demurrer to this plea.

The right decision of the question whether or not the goods in controversy have been forfeited to the United States by reason of unlawful introduction into the Indian country of intoxicating liquors depends

90 F.—46

upon whether or not a valid location of a claim to mineral lands situated within the Colville Indian reservation has the effect to extinguish the right of Indians to exclusively occupy the area embraced within such mineral claim. As I read the decisions of the supreme court of the United States, it is settled that the phrase "Indian country," as used in the Indian intercourse act of 1834, comprehends all of the public domain of the United States west of the Mississippi river, and not within the states of Missouri, Louisiana, and Arkansas, to which the Indian title had not at the date of that act been extinguished, but that as the white people have since the date of said act advanced westward and occupied the country, and as the original right of the Indians as occupiers has been ceded by treaty stipulations between them and the government, or extinguished by acts of congress providing for the settlement and occupation of the country by white people, this broad domain has ceased to be Indian country, except the portions thereof which the Indians retain the exclusive right to occupy. In the opinion of the supreme court, by Mr. Justice Miller, in the case of Bates v. Clark, 95 U. S. 204–210, the definition of "Indian country" is given as follows:

"The simple criterion is that, as to all lands thus described, it was Indian country whenever the Indian title had not been extinguished, and it continued to be Indian country so long as the Indians had title to it, and no longer. As soon as they parted with the title, it ceased to be Indian country, without any further act of congress, unless by the treaty by which the Indians parted with their title, or by some act of congress, a different rule was made applicable to the case."

And later, in the case of Ex parte Crow Dog, 109 U. S. 556–572, 3 Sup. Ct. 396, in the opinion of the court, Mr. Justice Matthews said:

"In our opinion, that definition now applies to all the country to which the Indian title has not been extinguished, within the limits of the United States, even when not within a reservation expressly set apart for the exclusive occupancy of Indians, although much of it has been acquired since the passage of the act of 1834, and notwithstanding the formal definition in that act has been dropped from the statutes; excluding, however, any territory embraced within the exterior geographical limits of a state, not excepted from its jurisdiction by treaty or by statute, at the time of its admission into the Union. * * *"

The constitution of this state contains a compact with the general government in accordance with the provisions of the enabling act under which the state was admitted into the Union, providing, among other things, that, until the Indian title shall have been extinguished by the United States, all Indian lands within the state shall remain under the absolute jurisdiction and control of the congress of the United States. So that the Colville reservation was by the compact and the enabling act excluded from the jurisdiction of the state government, and continues to be Indian country, as defined by the decisions of the supreme court, until the exclusive right of the Indians shall have been extinguished by act of the United States government. It is also settled by the decisions of the supreme court that the government of the United States is the primary and ultimate source of title to the public domain, and the Indians are not recognized as having any title, except the mere right of occupancy, which congress has the right at any time to extinguish. Johnson v. McIntosh, 8 Wheat. 543–604; U. S. v. Cook, 19

Wall. 591–594; Spalding v. Chandler, 160 U. S. 394–407, 16 Sup. Ct. 360.

The power to devest the Indian title being vested in congress, it becomes necessary to consider the act of 1898, authorizing the entry of mineral lands within the Colville reservation, and to ascertain the necessary effect which it has upon mineral lands located and claimed by citizens in accordance with the laws and regulations for acquiring title to lands of that description. The statute does not in terms throw the 'reservation open to exploration by prospectors and miners, nor abridge the right of Indians to continue in the exclusive right of occupancy, but that is the necessary consequence of the law; for it does provide that the mineral lands in the Colville Indian reservation shall be subject to entry under the laws of the United States in relation to the entry of mineral lands. I hold that these words confer the right upon citizens of the United States to become proprietors of mineral lands within the Colville reservation, in limited quantities. The lands can only be entered under and in accordance with the general laws of the United States in relation to the entry of mineral lands. This implies the discovery of precious metals in paying quantities in the lands to be entered, and the doing of work upon the claims necessary to develop and successfully operate mines. It requires labor and the use of implements, and carries with it the right to go upon the land for the purpose of working mines therein, the right to have habitations for workingmen, and to take there implements and conveniences for doing the work, all of which is inconsistent with the exclusive right of occupancy in the Indians. The word "entry," as it has been heretofore used in the land laws of the United States, "means that act by which an individual acquires an inceptive right to a portion of the unappropriated soil of the country, by filing his claim. * * *" Chotard v. Pope, 12 Wheat. 586; Denny v. Dodson, 32 Fed. 910. Evidently congress used the word in the statute now under consideration as a concise, and yet comprehensive, term to express the exact signification that has heretofore been given to the word in the decisions of the courts, the acts of congress, and in land-office practice, and I think, also, to include all the proceedings essential to perfect the right of a discoverer and locator to a mining claim; otherwise the provision is meaningless. The act certainly was not intended to authorize any person to file in the land office a claim to a piece of land, unless he had previously discovered and developed a mine therein. I hold that the law under consideration must necessarily have been intended by congress to authorize prospectors and miners to explore the Colville reservation for the purpose of developing its mineral resources, and to authorize citizens who make discoveries of valuable minerals therein to locate claims and work them, and that a valid location of a mineral claim has the effect to segregate such claim from the reservation, and extinguish the Indian title thereto, so that the land embraced in such mineral location ceases to be Indian country.

A stock of liquors is not introduced into the Indian country by being transported across an Indian reservation to a place where the owner may lawfully dispose of it, and is not subject to seizure while in transit,

nor after arrival at its place of destination.   U. S. v. Carr, 2 Mont. 234.

For the reasons given in this opinion, this court has heretofore quashed an indictment accusing the claimant of violating the laws prohibiting the introduction of spirituous liquors into the Indian country, founded upon the facts set forth in the pleadings herein, and for the same reasons the demurrer to the plea of the claimant is overruled.