### UNITED STATES v. TADISH et al.

#### (District Court, D. Arizona.   October Term, 1913.)

INDIANS (§ 35*)—INDIAN COUNTRY—INTRODUCTION OF LIQUOR—STATUTES.

Rev. St. §§ 2139, 2140, prohibiting the introduction of intoxicating liquor into Indian country, was intended to prevent such introduction for the purpose of furnishing it to the Indians, and hence proof that a number of hunters passing through an Indian Reservation had intoxicating liquor in their possession, presumably for their own use, and without any evidence that they intended to sell or furnish it to Indians, was insufficient to show the commission of an offense under such sections.

[Ed. Note.—For other cases, see Indians, Cent. Dig. §§ 61, 62; Dec. Dig. § 35.*]

Steve Tadish and others were indicted for introducing intoxicating liquor into Indian country, and on the trial moved for a directed verdict. Motion granted.

J. E. Morrison, Dist. Atty., of Phœnix, Ariz., for the United States.

J. L. B. Alexander, of Phœnix, Ariz., for defendants.

SAWTELLE, District Judge. The indictment in this case charges that:

"Steve Tadish, Andrew Sitka, Antonio Plich, Chris Wiech, and Stephen Bovvavich, on or about the 10th day of October, 1913, at the county of Gila, in the said district and within the jurisdiction of said court, did unlawfully, willfully, and feloniously introduce intoxicating liquor, to wit, one gill of whisky, into and upon the Indian country, to wit, into and upon the San Carlos Division of the White Mountain Indian Reservation, in the county of Gila, state and district of Arizona."

The testimony discloses that the same defendants left Globe, Ariz., which is without the Indian Reservation, with the avowed purpose and intention of going on a hunt in the White Mountains, and that the driver was to take them to a cabin near what is called the Government Sawmill, about 100 miles beyond Rice, Ariz., where they were arrested. The parties were traveling in a spring wagon, and stopped on or very

------

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

near the public road near Rice, to camp, reaching there before daybreak, and stopping for the purpose of rest. The government officers. hearing a noise, went to the camp, where they found some of the defendants asleep in the wagon, and some on the ground near by. When the officers came, they found in the front part of the wagon a half gallon jug of whisky, which had never been opened, and after the arrest of the defendants, on a search of the wagon, they found a pint flask of whisky, on the bottom of the wagon, under the blankets on which some of the defendants were sleeping when they were arrested.

There was no evidence which tended to show that the defendants intended or expected to dispose of the liquor to any of the Indians, or to allow the Indians to get it, or that it was intended for any other purpose than that of consumption by the party while on their hunt.

The evidence shows that the cabin to which the driver was to take the defendants was beyond the confines of the San Carlos Division of the White Mountain Reservation, but leaves the question whether it was on the reservation in doubt. We pass by the question whether the indictment, charging as it does an introduction of the liquor into the *San Carlos Division* of the White Mountain Indian Reservation, is proved by showing that the persons were simply passing through that division of the reservation to a point outside of it, though within another Indian Reservation, or another division thereof (though this question is a material one under the proof in this case), and will consider the case as it would stand if it were admitted that the house or place to which they were bound was clearly shown to be a part of, or within the San Carlos Division of, the reservation.

The question for determination is whether having the liquor in their possession under the circumstances shown is an introduction of liquor into the Indian country within the meaning of sections 2139 and 2140 of the Revised Statutes. These statutes are the modified remains of Act of June 30, 1834, c. 161, 4 Statutes at Large, 729, 732. The title of that act was "To regulate trade and commerce with the Indian tribes and to preserve peace on the frontier." It is plain from this title that the evil to be remedied or provided against was the obtaining of spirituous liquors by the Indians, and there does not appear to be any intention to do more than prevent them from getting it. This view is strengthened by an examination of section 2139 of the Revised Statutes as it appears in the edition of 1878. The side notes show that it was trade in liquor with the Indians that the compiler thought it designed to prevent; and it would seem a fair inference that the introduction there denounced should be that done with the purpose of enabling the Indians to obtain the liquors. This statute has since been amended to include other varieties of liquors and substitutes for same, but the amendments do not affect the act in the matter here under discussion.

It was held in United States v. Carr, 2 Mont. 234, that these laws were not intended "to prohibit the exploration or settlement of the public domain by persons who were citizens of the United States, * * * and might desire to carry with them spirituous liquors for legitimate * * * purposes," and it was held that "if * * *

such a person passes through the Indian country with spirituous liquors in his possession, without any intent to dispose of the same * * * contrary to law, neither the liquor, nor any other species of property accompanying the same, are liable to seizure or forfeiture."

In United States v. Four Bottles Sour Mash Whisky (D. C.) 90 Fed. 720, it was held that a stock of liquors is not introduced into the Indian country by being transported across an Indian Reservation to a place where the owner may lawfully dispose of it, and it is not subject to seizure while in transit, or after arrival at place of destination.

It is evident from these cases that the mere physical presence of a person having liquor in his possession in the Indian country is not enough to constitute the offense denounced by the statute.

There being no evidence that the liquor found in the possession of the defendants was intended to be disposed of to the Indians in any way, or that there was any intent to use the same for any unlawful purpose, how can it be held that the mere possession while the owner was temporarily in the Indian country for a lawful purpose of hunting constitutes such an introduction? It is nowhere made an offense to drink liquors while in the Indian country, and if, as has been repeatedly decided, the owner may lawfully transport his property across the Indian country without violating the statute, if he intends to lawfully dispose of it at destination outside of it, his mere presence with such property, in the absence of any proof tending to show any intention to enable the Indians, or any other person, to get it, cannot constitute the offense denounced by the statute. He certainly has as much legal right to drink his liquor as he has to make any other disposition of it, and it would seem that liquor held in possession for a lawful purpose would not subject its owner to criminal liability, in the absence of some evidence tending to show that he intended to use it unlawfully in the future.

There is absolutely nothing in the evidence or the circumstances surrounding the case which tends to show any intention to dispose of the liquor to the Indians, or any one else, while in the Indian country; and, this being so, the court is of the opinion that the defendants did not introduce liquor into the Indian country within the meaning of the statute, and a verdict of not guilty is directed.