BUTTERFIELD et al. v. UNITED STATES.

(Circuit Court of Appeals, Eighth Circuit.   March 19, 1917.)

No. 4527.

1. INDIANS ⬲35—INTRODUCING LIQUOR INTO INDIAN COUNTRY.
    The transportation of intoxicating liquor across the land of an Indian allottee, constituting Indian country, within Act Jan. 30, 1897, c. 109, 29 Stat. 506 (Comp. St. 1916, § 4137), was not an introduction of the liquor into Indian country in violation of the prohibition of such act, though the liquor was intended to be used at its destination in violation of the laws of the state and though it was transported into such state from another state in violation of Webb-Kenyon Act March 1, 1913, c. 90, 37 Stat. 699 (Comp. St. 1916, § 8739).
    [Ed. Note.—For other cases, see Indians, Cent. Dig. §§ 61, 62.]

2. INDIANS ⬲38(2)—INTRODUCING LIQUOR INTO INDIAN COUNTRY.
    Under Oklahoma Enabling Act June 16, 1906, c. 3335, 34 Stat. 267, requiring the Oklahoma Constitution to prohibit for 21 years the manufacture, sale, etc., of intoxicating liquors in the Indian Territory and the Osage Reservation, and providing that any person shipping or conveying liquors into such territory and reservation shall be punished as therein provided, the enforcement of the prohibition against shipment and conveyance was committed to the state courts upon the admission of the state into the Union.
    [Ed. Note.—For other cases, see Indians, Cent. Dig. §§ 22, 64, 66.]

3. STATES ⬲4—PUNISHMENT OF OFFENSES—POWER OF CONGRESS.
    Congress cannot provide for the punishment of a violation of the laws of a state justiciable only in its courts.
    [Ed. Note.—For other cases, see States, Cent. Dig. § 2.]

4. CONSTITUTIONAL LAW ⬲70(1)—JUDICIAL FUNCTIONS—ENCROACHMENT ON LEGISLATIVE DEPARTMENT.
    While in certain cases Congress may make the violation of state laws an element of a federal offense, the courts cannot do so by construction.
    [Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. §§ 129, 132, 137.]

    Smith, Circuit Judge, dissenting.

In Error to the District Court of the United States for the Western District of Oklahoma.

Johnston Butterfield and another were convicted of an offense, and they bring error.   Reversed and remanded.

Pat Malloy, of Tulsa, Okl., for plaintiffs in error.

W. Boothe Merrill, Asst. U. S. Atty., of Oklahoma City, Okl. (John A. Fain, U. S. Atty., of Lawton, Okl., on the brief), for the United States.

Before HOOK and SMITH, Circuit Judges, and REED, District Judge.

⬲For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

PER CURIAM. [1] Butterfield and Hall complain of their conviction and sentence for violating the act of January 30, 1897 (29 Stat. 506), by introducing liquor into the Indian country. The undisputed facts at the trial were as follows: The accused were employed to transport seven barrels of bottled beer by a team and wagon from a town in Kansas to Avant, Okl., a distance of about 40 miles. They did not own the team, wagon, or beer, and were not interested in the disposition of the beer after arrival and delivery to their employer at Avant. One of the main traveled roads between the two towns ran across an 80-acre tract of land of an Indian allottee, the title to which was then held in trust by the government and was inalienable without its consent. The allotment was therefore Indian country within the meaning of the statute. The accused were ignorant of the ownership of the land and of its restricted character. They did not intend to stop on that part of the road or to deliver any of the beer to any person there. The town of Avant is within the limits of the Osage Indian Reservation in what was Oklahoma Territory before the admission of the state, but the Indian title had been extinguished and it was not then Indian country. While the accused were traveling towards Avant on the road running through the allotment, Government officers stopped the wagon, arrested them, and destroyed the beer.

The question in the case is presented by the instruction of the trial court that the mere transportation of the liquor across the Indian allotment was not by itself a violation of the act of January 30, 1897, but that it would be so if it was being taken to Avant for sale there contrary to the laws of the state and the accused knew it. There was evidence of the unlawful purpose of the employer at Avant and of the knowledge of the accused. The question is thus stated by counsel for the government:

"Further, we do not contest the proposition that intoxicating liquor may be transported across an Indian allotment without subjecting the person so transporting it to the charge of introducing liquor upon an Indian allotment. This, however, is to be qualified to the extent that the transportation across such allotment must always be for a lawful purpose."

[2] We think the court erred. The intent of the act of 1897 and the precise nature of the offense charged should be kept in view. Avant, the destination of the liquor, was not in the part of the state that was formerly Indian Territory. There was therefore no attempt to violate the part of the act of March 1, 1895 (28 Stat. 693, c. 145), left in force by the Oklahoma Enabling Act of June 16, 1906 (34 Stat. 267). The Enabling Act may also be laid aside. Its prohibitions of shipment and conveyance were confined to those from points within the state to other designated points therein. Besides, upon the admission of the state into the Union their enforcement was committed to the state courts. Ex parte Webb, 225 U. S. 663, 32 Sup. Ct. 769, 56 L. Ed. 1248. In the case at bar the conveyance was from state to state. The utmost that can be said is that the interrupted transportation towards Avant was an attempt to violate the laws of Oklahoma, and that the unlawful intent subjected the traffic to the prohibition of the Webb-Kenyon Act of March 1, 1913 (37 Stat. 699). But that act imposed no

penalties of its own. Its purpose was to extend the policy of the Wilson Act of 1890 (Act Aug. 8, 1890, c. 728, 26 Stat. 313 (Comp. St. 1916, § 8738) by removing a further impediment to the enforcement of state laws regarding intoxicating liquors. Adams Express Co. v. Kentucky, 238 U. S. 190, 198, 35 Sup. Ct. 824, 59 L. Ed. 1267, L. R. A. 1916C, 273, Ann. Cas. 1915D, 1167.

[3, 4] We refer to the above statutes because counsel has cited most of them as bearing on the case at bar, but the offense charged cannot be made out in that way nor by our conviction in a general sense of wrongdoing by the accused. In a criminal statute all of the elements of the offense must be definitely prescribed or be definitely ascertainable, and the offense must be against the sovereignty which prosecutes. Congress cannot provide for the punishment of a violation of the laws of a state justiciable only in its courts. United States v. Hall, 98 U. S. 343, 345, 25 L. Ed. 180. It may, in certain cases having a federal aspect or relevance, make the violation of state laws an element of a federal offense, but the courts cannot do so by construction. They cannot group two or more laws together to find enough in the assemblage to fit the conduct of defendants. The object of the act of January 30, 1897, under which alone the indictment was framed, is plain. It is to protect Indians of certain classes from the evils of the use of intoxicating liquor, and the better to accomplish it the prohibition was extended to the introduction of such liquor into places where such Indians would most likely be found. The trial court evidently held, and counsel for the government agrees, that the term "introduce" in the statute signifies a stoppage or destination within the prohibited district, and not a continuous transit through it, unless the intent beyond is unlawful. But we cannot see what bearing the intent of the employer of the accused as to the disposition of the liquor at Avant has upon the object of the statute. Whatever the intent of the employer might have been, lawful or unlawful, the wagon and its contents would have been driven through the allotment with no difference in relation to the land or effect upon the occupants. Except for the adventitious circumstance that the transportation by team and wagon afforded greater facility for violating the statute, the case would not have been different had it been by railroad train without stop.

The sentences are reversed, and the cause is remanded for a new trial.

SMITH, Circuit Judge (dissenting). With all possible respect for the opinions of my Associates I feel compelled to unqualifiedly dissent from the foregoing opinion. The defendants below, plaintiffs in error here, were indicted, charged with a violation of the act of January 30, 1897. Chapter 109, 29 Stats. 506, U. S. Compiled Statutes 1916, § 4137, which so far as material is as follows:

"Any person who shall introduce or attempt to introduce any malt, spirituous, or vinous liquor, including beer, ale, and wine, or any ardent or intoxicating liquor of any kind whatsoever into the Indian country, which term shall include any Indian allotment while the title to the same shall be held in trust by the government, or while the same shall remain inalienable by the allottee without the consent of the United States, shall be punished by im-

prisonment for not less than sixty days, and by a fine of not less than one hundred dollars for the first offense and not less than two hundred dollars for each offense thereafter: Provided however, that the person convicted shall be committed until fine and costs are paid."

The defendant Butterfield, a teamster, got a team and wagon at a ranch near Avant, which is in Osage county, formerly the Osage Indian Reservation, Okl., and drove to Hewins, Kan. The exact distance between Avant and Hewins does not appear, but it does appear that in making the trip from Avant to Hewins, Butterfield camped all night on the road, but expected to return in a continuous journey of all day and most of the night. At Hewins he met Hall, his codefendant, and they went to the express office and got seven barrels of beer and started to Avant with them. At some time before the capture the cards showing the consignee of the liquors were defaced and destroyed, and one of the beer barrels was opened so that bottles could be extracted, and five bottles were taken from the barrel and given to an automobile party they met on the road. How many other bottles were taken from this open barrel does not appear. Shortly thereafter they were arrested, while actually on an allotment within the meaning of the section of the statutes referred to, with substantially the balance of the liquor in their possession.

In Parsons on Contracts (9th Ed.) vol. 2, p. 647, the distinction is pointed out between interpretation and construction according to the celebrated work of Prof. Francis Lieber on Legal and Political Hermeneutics, or the Principles of Interpretation and Construction in Law and Politics. The Supreme Court has also approved the distinction as laid down by the same distinguished professor in United States v. Farenholt, 206 U. S. 226, 229, 27 Sup. Ct. 629, 51 L. Ed. 1036.

Guided by these aids upon a mere interpretation of the act of 1897 referred to, it will be plain and manifest that the defendant introduced liquors into the Indian country; that is, on an Indian allotment. It is only when we come to construe the act as distinguished from interpreting it that there can be any pretense of support for the majority opinion. There is no decision of the Supreme Court that under any circumstances one may ship liquors through the Indian country, even though the point of origin and destination are both points at which the handling of liquor is legal. There is not a decision to that effect in the Circuit Courts of Appeals, unless it be Schaap v. United States, 127 C. C. A. 415, 210 Fed. 853. That was a shipment from Ft. Smith, Ark., to Kiowa, Okl., and the charge was that the defendant had introduced, and had attempted to introduce, liquors into the Indian country. The subject is not even mentioned in that opinion as to the effect of the transportation of liquors through the Indian country in reaching their destination. True, as a trip from Ft. Smith to Kiowa would necessarily cross many allotments still held in trust by the government, the case involved the question as to whether crossing such allotments was an introduction into Indian country if the point of destination was not Indian country. The question here was not necessarily involved in that case, because if the right of way of the railroad had been acquired in such a way as to extinguish the Indian title, liquors might be transported between lands which were a part of the Indian country, but

never in the Indian country, on their way from Ft. Smith to Kiowa, which were neither of them in the Indian country. Clairmont v. United States, 225 U. S. 551, 32 Sup. Ct. 787, 56 L. Ed. 1201.

Nothing was said in the opinion as to the character of the title to the right of way, and the most that can be said is that possibly the liquors there in question had to pass through the Indian country. With the exception of the Schaap Case there has never been any decision on the subject, so far as I can ascertain, aside from decisions of the District Courts and of the Territorial Court of Montana. Of course the trial court in this case has so held if the liquors were transported for a lawful purpose. The question first came before the Supreme Court of the Territory of Montana in United States v. Carr, 2 Mont. 234. In that case the opinion is little more extensive than the syllabus, which is as follows:

"Citizens of the United States, and those who have declared their intention to become such, have the right to carry spirituous liquors through the Indian country for the purpose of lawfully selling the same in other places."

The next case is United States v. Twenty-Nine Gallons of Whisky (D. C.) 45 Fed. 847. This opinion was delivered by Judge Hiram Knowles, who had sat upon the Supreme Court of Montana when the case of United States v. Carr, supra, was decided. In that case Judge Knowles said:

"The purpose of the statute was undoubtedly to prevent the placing of whisky, or ardent or spirituous liquors, in such a place as would make it accessible to Indians. It was not the purpose of that statute to interfere in any manner with the commerce in spirituous liquors between sections of the country not Indian. The construction of that statute, which would allow the seizing of spirituous liquors found upon an Indian reservation without reference to the purposes in regard to which it came there, would prevent the transportation of such liquors from the East to the Pacific Coast on the line of the Northern Pacific Railroad. It would prevent such liquors from being transported to Montana, on the line of that road, or the Great Northern Road; for it is well known that all these roads traverse, before they reach the settled portions of Montana, Indian reservations. If the simple fact of the finding of such liquors within an Indian reservation, without license, is sufficient to make the same liable to forfeiture, and all conveyances in which the same may be found, then there is not a through passenger train on either the line of the Great Northern or Northern Pacific Railroads which would not be subject to seizure and forfeiture, under the above statute; for both carry, it is well known, more or less spirituous liquors across Indian reservations on the line of said roads. I do not think Congress in this statute contemplated any such result. For these reasons I hold that the proper construction of the above statute, as to the terms, 'no ardent spirits shall be introduced, under any pretense, into the Indian country,' is as follows: Whenever such liquors are taken into an Indian country, as their place of destination or use, then they have been introduced into such country. In other words, when such liquors reach an Indian country, as the end of their journey, they have, within the meaning of that statute, been introduced into such country. It is not necessary to show that they were brought there for the purpose of sale to Indians or any one. The transportation of such liquors through an Indian country, between places outside the same, as an article of commerce, is not, within the meaning of that statute, introducing them into said country."

Much of this opinion was erroneous under the subsequent decision in Clairmont v. United States, 225 U. S. 551, 32 Sup. Ct. 787, 56 L. Ed. 1201, heretofore referred to.

In United States v. Four Bottles Sour-Mash Whisky (D. C.) 90 Fed. 720, it is said:

"A stock of liquors is not introduced into the Indian country by being transported across an Indian reservation to a place where the owner may lawfully dispose of it, and is not subject to seizure while in transit, nor after arrival at its place of destination."

In United States v. Tadish, 211 Fed. 490, the District Court for Arizona held that evidence that a number of hunters passed through an Indian reservation with intoxicating liquors in their possession, presumptively for their own use, was insufficient to show the commission of the offense under the statute. That case is based upon the authority of United States v. Carr, 2 Mont. 234, and quotes it by saying that it was not intended—

" 'to prohibit the exploration or settlement of the public domain by persons who were citizens of the United States, * * * and might desire to carry with them spirituous liquors for legitimate * * * purposes,' and it was held that 'if * * * such a person passes through the Indian country with spirituous liquors in his possession, without any intent to dispose of the same * * * contrary to law, neither the liquor, nor any other species of property accompanying the same, are liable to seizure or forfeiture.' "

He then quotes the opinion in United States v. Four Bottles Sour-Mash Whisky, supra, as we have quoted it. He continues:

"It is evident from these cases that the mere physical presence of a person having liquor in his possession in the Indian country is not enough to constitute the offense denounced by the statute."

Now let us see what was the condition of these defendants. By the Enabling Act for the admission of Oklahoma into the Union in the second subdivision of section 3, 34 Stats. 267, 269, the new state was required to provide in its Constitution an absolute prohibition of the manufacture, sale, barter, giving away, or otherwise furnishing of intoxicating liquors within those parts of said state now known as the Indian Territory and the Osage Indian Reservation for the period for 21 years. It is true this was not an independent act of Congress prohibiting such sale, but was an act of Congress providing as a condition precedent to the admission of the state into the Union that the Constitutional Convention in drafting a new state Constitution embrace a prohibition of the sale of liquors throughout the Osage Indian Reservation and in the town of Avant. Without assuming that the state of Oklahoma would not have enacted such a constitutional provision and statutes to enforce it without the intervention of Congress, Congress made such provision in pursuance of its early treaties with the Osage Indians a condition precedent to the admission of the state into the Union, and the state in all respects complied with this act of Congress. There has never been an hour when a sale of intoxicating liquor by a proprietor or manager of a joint in Avant was not illegal since the admission of the state, and the same was true for a long period anterior to the admission of the state into the Union.

Again by the Webb-Kenyon law (37 Stats. 699) the transportation of intoxicating liquors from one state to another for the purpose of sale in violation of the laws of that state is expressly prohibited.

241 F.—36

These liquors were undoubtedly being transported under the evidence to Avant to be there sold in violation of the laws of Oklahoma, and the transportation was in violation of the Webb-Kenyon law, which has recently been interpreted and construed by the Supreme Court of the United States in James Clark Distilling Co. v. Western Maryland Railway Co. et al., 242 U. S. 311, 37 Sup. Ct. 180, 61 L. Ed. 326.

My Brethern are now about to construe rather than interpret the act of 1897 so that the hauling of liquors upon an Indian allotment and thereby clearly introducing into the Indian country in violation of the Enabling Act of the state of Oklahoma, of the Constitution and statutes of that state, and of the Webb-Kenyon law, shall not be construed to be an introduction into the Indian country, and thus turn these defendants free who have violated statute after statute of the United States. In this I cannot concur. I am content to abide with the decisions heretofore rendered that the transportation of liquors through an Indian reservation where the liquors are lawfully acquired to a place where they may be lawfully sold is not a violation of the spirit of the law against the introduction of liquors into the Indian country, but I cannot concur in holding that when defendants violated the plain letter of the act of January 30, 1897, by carrying liquors into the Indian country in a wagon, their route being largely through allotments and therefore a part of the Indian country, the liquors not being in unbroken original packages, but open, so that distribution could be made along the route, and in fact was made, as in this case, with intent to deliver the residue of the liquor for sale at a place where such sale would be illegal, not by interpretation, but wholly by construction, an exception shall be injected into the law in aid of the violation of the Enabling Act of Congress for the state of Oklahoma, the Constitution, and laws of Oklahoma and the Webb-Kenyon law.

I think the case should be affirmed.