**UNITED STATES v. ONE 1941 4-DOOR BUICK SEDAN, etc.**

**Civ. No. 583.**

District Court, D. Minnesota,
Fifth Division.

March 30, 1946.

Victor E. Anderson, U. S. Atty., and William P. Murphy, Asst. U. S. Atty., both of St. Paul, Minn., for plaintiff.

Arthur M. Clure, of Duluth, Minn., for intervening claimant, Minnesota Nat. Bank of Duluth.

DONOVAN, District Judge.

Libelant commenced a proceeding pursuant to Title 25, U.S.C.A., Sections 246 and 247, for the condemnation and forfeiture of the automobile above described. Said automobile was seized February 3, 1945, within the territorial limits of the Bois Forte Indian Reservation, also known as the Nett Lake Indian Reservation.

Elmer Bernard Herhusky, the owner of the automobile, was taken into custody and convicted on his plea of guilty for "unlawfully introducing and possessing four-fifth quart bottle of intoxicating liquor on Indian reservation", and used the automobile on said date for that purpose.

The Minnesota National Bank of Duluth, a national banking association under the laws of the United States, intervened and by answer alleged that intervenor, on or about July 28, 1944, purchased a conditional sales contract from Tormoen Motor Sales Company, the terms of which required payment by said Elmer Bernard Herhusky of a purchase price of $1739.90, of which $530 was payable on July 25, 1944, the date of said contract, and the balance "in fifteen monthly installments of $80.66". The contract was recorded in the office of the Register of Deeds of Koochiching County, Minnesota, on July 28, 1944. At the time of said seizure, there remained due and unpaid under the terms of said contract the sum of $724.90.

Intervenor asks "in the event a forfeiture is ordered that said vehicle be sold, and that the interest in and the amount of loss of * * * claimant be duly determined herein".

A summary of the facts leading to the arrest of Herhusky and the seizure of said vehicle is as follows:

Herhusky resided at Nett Lake and was employed there at the Indian Co-operative or Trade Store. Herhusky and his wife lived in a lean-to or shed on the westerly side of the store. A barn, used as a garage, was located on the rear of the government lot containing said buildings.

At about 8 p. m., February 3, 1945, Herhusky, driving said automobile from Orr, Minnesota, to his home on the reservation, arrived on said lot and parked near the garage door. An officer of the Indian Service named H. P. Davis had arrived just ahead of Herhusky. Davis drove into the "enclosure back of the Traders' Store, which also includes the dance hall",

and remained in his car for the purpose of policing a dance, about to commence, and which Davis expected would be attended by Indians.

Davis testified that he had reasons to be suspicious of Herhusky because of complaints made to the effect that Herhusky was in the habit of taking Indians away from the Reservation and returning them thereto in a drunken condition. Describing the situation leading to the seizure of the automobile in question, Officer Davis said: "We drove up there and parked and stayed in the automobile. It was somewhat of a stormy night and we stayed in the automobile. We were there for approximately 15 minutes when an automobile came in through the opening, turned up and stopped near a garage. From there we went over to the automobile. We recognized it as belonging to Mr. Herhusky. We went up to the automobile, to the left side. I opened the front door of the automobile near the driver and found Mr. Herhusky under the wheel—sitting in the front seat under the wheel. When I opened the door I noticed a distinct odor of liquor. I introduced myself as an officer of the Indian Service and I informed him that we had had numerous reports that he had been taking Indians out, off of the reservation, and securing liquor and bringing them back intoxicated, and had been introducing liquor on the reservation. I told him we were going to search his automobile—asked him first if he had any intoxicating liquor with him. He didn't answer that question. It was dark and I turned my flashlight to the back part of the automobile and I noticed a package lying on the back cushion of the back seat, containing two quart bottles of whiskey. The necks of the bottles were sticking out of the sack. I took those two bottles and then went around to the other side and looked through the front part of the automobile and found another quart bottle, very near full, in the glove compartment of the automobile. I placed Mr. Herhusky under arrest and informed him that we would have to seize the automobile. After that, why I asked him to get out of his automobile, which he did, and he produced the keys to the car on my request. I took Mr. Herhusky over to·my automobile, which was parked just in back of this car, and asked him his name, age, and other questions about himself that is necessary for my report. I also asked him if he did not know that it was a violation of the law to bring liquor on to the reserva-

tion. I also asked him if he had received a letter advising him that it was a violation of the law from Superintendent Scott some time ago. He stated that he had received the letter from Mr. Scott. I don't recall his answer as to knowing of the violation but he admitted receiving the letter from Mr. Scott. * * * Mr. Scott at that time was the Superintendent of the Consolidated Chippewa Agency and located at Cass Lake. * * * I asked him (Herhusky) what he intended to do with the liquor that he had in his possession and he stated that he was going to use it himself. I made the statement that three quarts, it seemed to me, was a lot of liquor for his own use and asked him if he brought it in for anyone else, or was going to distribute it to anyone around the dance. I complained that three quarts was too much liquor if he just wanted a little drink himself; that it was quite a quantity to bring in when he went in and out of the Nett Lake Agency to the railroad or to Orr once to three times a week for freight. He didn't answer the question. He insisted that the liquor was his. He said it belonged to him; that he was going to use it for himself."

It is undisputed that the premises above described, and the place where said automobile was parked, were United States Government property, so-called "Indian country", and within the limits of Bois Forte Indian Reservation.

On or about May 3, 1945, an information was filed by the United States Attorney for the District of Minnesota, charging Herhusky with violations of law for "unlawfully introducing and possessing" intoxicating liquor "on Indian reservation". Herhusky entered a plea of guilty and was sentenced and "committed to the custody of the Attorney General or his authorized representative for imprisonment for the period of six (6) months and to pay a fine of $100.00." Sentence was suspended and defendant Herhusky placed on probation for a period of two years "on condition that said fine * * * be paid".

Service of monition was duly made upon all interested parties herein. Herhusky neither appeared nor answered. Intervenor answered and was the sole opposition libelant had at the trial. Libelant prays for a decree of forfeiture because of the claimed violation of said statute.

Intervenor contends the evidence does not justify a finding of forfeiture on the

ground that "the vehicle in question was not used in the introducing of intoxicating liquor into Indian country within the meaning of the statute".

The applicable statutes read as follows:

25 U.S.C.A. § 245: "The possession by a person of intoxicating liquors in the country where the introduction is prohibited by treaty or Federal statute shall be prima facie evidence of unlawful introduction";

25 U.S.C.A. § 246: "If any superintendent of Indian affairs, Indian agent, or subagent, or commanding officer of a military post, has reason to suspect or is informed that any white person or Indian is about to introduce or has introduced any spirituous liquor or wine into the Indian country in violation of law, such superintendent, agent, subagent, or commanding officer, may cause the boats, stores, packages, wagons, sleds, and places of deposit of such person to be searched; and if any such liquor is found therein, the same, together with the boats, teams, wagons, and sleds used in conveying the same, and also the goods, packages, and peltries of such person, shall be seized and delivered to the proper officer, and shall be proceeded against by libel in the proper court, and forfeited, one-half to the informer and the other half to the use of the United States; and if such person be a trader, his license shall be revoked and his bond put in suit. It shall moreover be the duty of any person in the service of the United States, or of any Indian, to take and destroy any ardent spirits or wine found in the Indian country, except such as may be introduced therein by the War Department. In all cases arising under this section and section 241, Indians shall be competent witnesses";

25 U.S.C.A. § 247: "Automobiles or any other vehicles or conveyances used in introducing, or attempting to introduce, intoxicants into the Indian country, or where the introduction is prohibited by treaty or Federal statute, whether used by the owner thereof or other person, shall be subject to the seizure, libel, and forfeiture provided in the preceding section."

Reduced to its simplest terms, the issue is whether or not the automobile was used to introduce "spirituous liquor or wine into the Indian country in violation of law."

■ The fact that intervenor was the bona fide holder and assignee of a conditional sales contract pursuant to Minnesota law, does nothing more than establish intervenor's interest in said vehicle prior to libelant's seizure thereof. The claim of an innocent owner or lienholder is of no avail for the reason that here the statutory condemnation and forfeiture arises out of the use of the vehicle. Hawley v. United States, 8 Cir., 15 F.2d 621.

■ The facts are undisputed that two quarts of intoxicating liquor were found by Davis on the back seat, and another quart bottle "very near full" in the glove compartment of the automobile when it came to a stop and was parked by Herhusky "in the Indian country", where it was seized. These conceded facts bring the matter within 25 U.S.C.A. § 245, and constitute "prima facie evidence of unlawful introduction." Under the circumstances, they warranted the seizure with which we are here concerned.

Following the arrest, Herhusky told officer Davis that the three quarts of whiskey were "his; * * * that he was going to use it for himself". Does this rebut the presumption created by said section 245? The Court thinks it does not. The claimed intent of Herhusky to limit the intoxicating liquor to his own use, aided by the persuasive force of learned counsel's brief, is not sufficient to overcome the "prima facie evidence of unlawful introduction." There is an absence of facts necessary to rebut the presumption of "unlawful introduction" by Herhusky, who was arraigned and pleaded guilty in the criminal proceedings to a violation of the law in this instance.

■ The Court is not unmindful of the cases cited and quoted by intervenor. However, all of them, with the possible exception of United States v. Tadish et al., D.C.Ariz., 211 F. 490, can be distinguished from the instant case. The Tadish case, decided in 1913, arose prior to the Act of Congress last quoted, supra. The same can be said of other cases cited and quoted from by intervenor.

"Possession of intoxicating liquors in [Indian] country" appears to be the criterion that is most controlling here. Harris v. United States, 8 Cir., 249 F. 41; Castle v. Lewis, 8 Cir., 254 F. 917; Brown v. United States, 8 Cir., 265 F. 623.

The propriety of the search and seizure cannot be seriously questioned in the present case. There was ample reason for the arresting officer to suspect Herhusky of violating the law. It is not as though Herhusky, destined for a point beyond and without Indian country, merely stopped to take on supplies and proceeded on his journey. The liquor here reached its destination in Indian country.

To reach a conclusion that the "prima facie evidence of unlawful introduction" was successfully met by intervenor would require the Court to indulge in conjecture. Officer Davis had "reason to suspect" that Herhusky intended no good or lawful use of the supply of liquor found in the automobile. The necessary elements of the offense complained of were present upon seizure. Buchanan v. United States, 8 Cir., 15 F.2d 496; Aldridge v. United States, 10 Cir., 67 F.2d 956.

The Court is of the opinion that the evidence justifies a finding of forfeiture. In this proceeding the Court is limited to the relief authorized by the applicable statutes; hence the matter of intervenor's lien and its relationship to Herhusky cannot be here determined.

Attorneys for libelant may submit findings and serve the same on counsel for intervenor on five days' notice.

An exception is accorded to intervenor.